No. 124,170

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

GREAT PLAINS ROOFING AND SHEET METAL, INC.,
*Appellant*,

v.

K BUILDING SPECIALTIES, INC., et al.,
*Appellees*.

SYLLABUS BY THE COURT

1.

Under K.S.A. 2020 Supp. 16-121(b), the Kansas anti-indemnity statute, an indemnification provision in a construction contract is void and unenforceable if it requires the promisor to indemnify the promisee for the promisee's negligence or intentional acts or omissions.

2.

When an indemnification provision permits indemnity "to the maximum extent allowed by applicable law," the provision is valid, but it limits the promisor's indemnification liability so that the promisor is not responsible for the promisee's negligence.

3.

When an injured party asserts a claim for negligence, all parties whose causal negligence contributed to the injury must be joined to the original action, with no distinction between tort claims and contract claims. This is called the one-action rule.

1

## 4.

The intent and purpose of the Legislature in adopting K.S.A. 60-258a was to impose individual liability for damages based on the proportionate fault of all parties to the occurrence which gave rise to the injuries and damages even though one or more parties cannot be joined formally as a litigant or be held legally responsible for his or her proportionate fault. It was the intent of the Legislature to fully and finally litigate in a single action all causes of action and claims for damages arising out of any act of negligence.

## 5.

Kansas law requires defendants seeking to minimize their liability in comparative fault situations not involving a chain of distribution or similar commercial relationship to do so by comparing the fault of other defendants to reduce their own share of liability and damages. If a defendant chooses to settle and obtain release of common liabilities involving other parties whom the plaintiff did not sue, the defendant does not have an action for comparative implied indemnity or postsettlement contribution. Under Kansas comparative fault procedure, such a remedy is not necessary, and such an action defeats the policy of judicial economy, multiplying the proceedings from a single accident or injury.

## 6.

The doctrine of comparative fault requires all the parties to the occurrence to have their fault determined in one action.

## 7.

The causal fault or negligence of all parties to the occurrence, including the negligence of the injured plaintiff and any third parties, should be submitted to the jury and the percentage of fault of each determined in one lawsuit.

8.

When a contract requires a promisor to indemnify another for the promisor's share of negligence, the underlying negligence tort controls the promisor's liability, and it becomes impossible to determine contractual liability without a determination of fault.

9.

To prevail on a claim for partial indemnity or contribution against a third-party defendant, the settlor must show that it actually paid damages on behalf of that third party. If the third party was never at risk of having to pay for its own damages, the settlor cannot show it benefited the third-party defendant, and the value of its contribution claim is zero.

10.

Comparative implied indemnity, or as it is more accurately termed postsettlement contribution, describes the cause of action initiated by a tortfeasor in a negligence lawsuit to recover from a joint tortfeasor the share of the damages proportional to the joint tortfeasor's fault.

11.

For a tortfeasor to pursue a claim of contribution or comparative implied indemnity against a joint tortfeasor who was not sued by the plaintiff, the tortfeasor must join the joint tortfeasor as a third party under K.S.A. 2020 Supp. 60-258a(c) and assert a timely claim against the joint tortfeasor.

12.

The requirement to join additional parties under K.S.A. 2020 Supp. 60-258a(c) does not distinguish between tort and contract claims, but instead focuses on the need for a fact-finder to determine the percentage of negligence attributable to each party.

13.

An exception to the one-action rule allows plaintiffs to pursue separate actions against tortfeasors where there has been no judicial determination of comparative fault, but this exception does not allow defendants to bring separate actions.

Appeal from Johnson District Court; PAUL C. GURNEY, judge. Opinion filed April 29, 2022. Affirmed.

*Jenifer W. Svancara*, *Jeffrey C. Baker*, and *Christopher R. Staley*, of Sanders Warren Russell & Scheer LLP, of Overland Park, for appellant.

*David J. Welder* and *Michael G. Norris*, of Norris Keplinger Hicks & Welder, LLC, of Leawood, for appellees.

Before ISHERWOOD, P.J., GREEN and BRUNS, JJ.

GREEN, J.: An on-the-job accident injured Philip Andrew Trokey, and he sued Great Plains Roofing and Sheet Metal, Inc. (Great Plains) in Jackson County, Missouri. Great Plains settled with Trokey. Then, Great Plains filed an indemnification suit against K Building Specialties, Inc. and Installtec, Inc. (K Building) in Johnson County, Kansas. K Building and Great Plains both moved for summary judgment. The Johnson County District Court granted summary judgment for K Building. Great Plains appeals. Because Kansas' one-action rule bars Great Plains from postsettlement contribution, we affirm.

FACTS

In July 2014, Great Plains and K Building were subcontractors working on a construction project at the John Deere Regional Facility in Olathe, Kansas. Great Plains and K Building had separate contracts with The Weitz Company (Weitz), the general contractor. K Building's employee, Spencer Plumb, operated an aerial lift despite not

4

having an aerial lift certification and not fully inspecting the lift before operating it. While Plumb operated the lift, it tipped over. The K Building employee in the lift bucket, Philip Andrew Trokey, suffered injuries including a fractured femur, hip, ribs, multiple fractures to vertebrae, and a traumatic brain injury. Trokey sued the aerial lift's owner, Great Plains, in Jackson County, Missouri. His claims against Great Plains were: (1) supplying a dangerous chattel or product, (2) failure to warn, and (3) general negligence.

K Building's contract with Weitz instructed K Building to use the aerial lift owned by Great Plains. K Building agreed that it would be responsible for the safe operation of the aerial lift as follows: "Man lifts and scaffold will be provided by others for use by [K Building]. [K Building] is responsible for the safe operation of equipment and also responsible for repair costs for damages caused while operating the equipment." Under the contract, K Building also "agrees and acknowledges that it has assumed full responsibility and liability for safety precautions in connection with the construction means, methods, techniques, sequences, supervision and procedures pertaining to [K Building's] Work." K Building also agreed to the following: "No [K Building] employee shall operate any equipment unless specifically authorized and trained to do so." And K Building "shall take reasonable precautions (including, without limitation, providing any and all necessary training) for the safety of and should provide reasonable protection to prevent damage, injury, or loss to persons or property arising out of, relating to or in connection with its use of the Equipment."

During depositions, Weitz asserted that if K Building "broke it, caused damages, they were fully responsible for everything related to those damages, whether it be equipment or people or anything." After the incident which injured Trokey, K Building paid for the property damage to the aerial lift.

K Building's contract with Weitz also contained an indemnification provision, which read as follows:

5

"The undersigned Subcontractor or Supplier ('Subcontractor'), and for its officers, directors, members, employees, agents and assigns, in consideration for its use of equipment (including, but not limited to, scaffolding) ('Equipment') provided by Contractor or others, hereby releases, waives and discharges Contractor and the Project Owner, and each of their respective affiliates, agents, officers, employees, insurers, sureties and other subcontractors and suppliers (collectively, the 'Released Parties') from any and all claims, losses, costs including attorneys' fees, damages, injury, death, expenses, and liability arising out of, relating to or in connection with the Subcontractor's use of the Equipment. Subcontractor further agrees, to the maximum extent allowed by applicable law, to defend, indemnify, and hold harmless the Released Parties from any and all claims by whomsoever made, losses, costs including attorneys' fees, damages, injury, death, expenses, and liability arising out of, relating to or in connection with any acts or omissions of, or use of the Equipment by, the Subcontractor or the Subcontractor's Agents, servants or employees, and regardless of the active or passive negligence or contribution by the Released Parties. The Subcontractor represents and affirms that it has or has caused the Equipment to be fully inspected and acknowledges that the Equipment is in good and safe operating condition and repair and accepts the Equipment in its present condition and repair including latent or hidden defects, if any. . . . In the event any portion of this release and indemnity is held to be invalid, it shall be interpreted so as to allow the fullest release and indemnity permitted by law."

Trokey filed his petition for damages in Jackson County, Missouri. In the Missouri lawsuit, Trokey alleged that Great Plains was negligent for providing a lift with a flat tire because the lift tilted toward the flat tire, causing it to tip over. Specifically, Trokey alleged that Great Plains was negligent in the following ways:

"a. In failing to fix the underinflated tire on the Lift;
"b. In failing to warn [Trokey] that the Lift was dangerous and defective in its current condition;
"c. In failing to properly maintain the Lift;
"d. In failing to properly repair the Lift despite knowing of a dangerous condition;
"e. In representing that the Lift was safe for use;

6

"f.   In failing to properly inspect the Lift;

"g.   In failing to properly supply the Lift in a safe condition;

"h.   In affirmatively claiming that the Lift was safe for use;

"i.   In supplying the Lift to an operator that was unqualified to operate the Lift."

Trokey's Missouri lawsuit also included claims against Plumb for negligently operating the lift without training, but Trokey dismissed those claims with prejudice.

Great Plains filed a third-party petition against K Building and Weitz in the Missouri lawsuit, asserting claims of indemnification and contribution. But then Great Plains voluntarily dismissed its claims against K Building and Weitz without prejudice. Nothing in the record explains why Great Plains dismissed its claims against K Building and Weitz.

Great Plains settled with Trokey in October 2019.

While the Missouri lawsuit was ongoing, Great Plains filed a petition against K Building in Johnson County, Kansas, alleging breach of contract and seeking a declaratory judgment. Great Plains' second amended petition added claims for contractual indemnity, comparative implied indemnity, and contribution. Great Plains and K Building filed cross-motions for summary judgment, and the trial court granted summary judgment to K Building.

Great Plains timely appeals.

ANALYSIS

*Did the contract's indemnity clause violate Kansas' anti-indemnity statute?*

Great Plains argues that the trial court erred in holding that the indemnification provision violated the Kansas anti-indemnity statute. Although Great Plains is correct and the provision is valid, it is largely irrelevant. The one-action rule, not the Kansas anti-indemnity statute, prevents Great Plains from prevailing here.

An appellate court exercises unlimited review over the interpretation and legal effect of written instruments and is not bound by the lower court's interpretations or rulings. Whether a written instrument is ambiguous is a question of law subject to de novo review. *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018).

If the relevant facts before the trial court were undisputed, fact questions may be resolved by the appellate court de novo. *Simpson v. City of Topeka*, 53 Kan. App. 2d 61, 68, 383 P.3d 165 (2016) (whether a party has defaulted on a contractual obligation is reviewed de novo if the relevant facts are undisputed); *First Nat'l Bank of Omaha v. Centennial Park*, 48 Kan. App. 2d 714, 725, 729-30, 303 P.3d 705 (2013) (whether a party has substantially performed under the contract or whether the implied duty of good faith and fair dealing was violated are reviewed de novo if underlying facts are undisputed); *Inter-Americas Ins. Corp. v. Imaging Solutions Co.*, 39 Kan. App. 2d 875, 885-86, 185 P.3d 963 (2008) (interpreting reasonable time provisions of UCC contract is a question of fact but becomes a question of law when facts are not in dispute).

Contracts are presumed legal. The burden lies on the party challenging the contract to prove it is illegal. *Frazier v. Goudschaal*, 296 Kan. 730, 749, 295 P.3d 542 (2013) (co-parenting agreement); *National Bank of Andover v. Kansas Bankers Surety Co.*, 290 Kan. 247, 257, 225 P.3d 707 (2010) (bankers surety bond).

The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the parties' intent should be determined from the language of the contract without applying rules of construction. *Trear*, 308 Kan. at 936; see *Schmitendorf v. Taylor*, 58 Kan. App. 2d 292, 302, 468 P.3d 796 (2020).

Additionally,

"'"[a]n interpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners. The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided."' [Citations omitted.]" *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013).

"'It is the duty of courts to sustain the legality of contracts in whole or in part when fairly entered into, if reasonably possible to do so, rather than to seek loopholes and technical legal grounds for defeating their intended purpose. . . . [T]he paramount public policy is that freedom to contract is not to be interfered with lightly.' [Citations omitted.]" *Idbeis v. Wichita Surgical Specialists, P.A.*, 279 Kan. 755, 770, 112 P.3d 81 (2005).

See *Wasinger v. Roman Catholic Diocese of Salina*, 55 Kan. App. 2d 77, 80, 407 P.3d 665 (2017).

"'In placing a construction on a written instrument, reasonable rather than unreasonable interpretations are favored by the law. Results which vitiate the purpose or reduce the terms of the contract to an absurdity should be avoided. The meaning of a contract should always be ascertained by a consideration of all pertinent provisions and never be determined by critical analysis of a single or isolated provision.' [Citations omitted.]" *Einsel v. Einsel*, 304 Kan. 567, 581, 374 P.3d 612 (2016).

See *In re Marriage of Gerleman*, 56 Kan. App. 2d 578, 588-89, 435 P.3d 552 (2018).

Under K.S.A. 2020 Supp. 16-121(b), "[a]n indemnification provision in a contract which requires the promisor to indemnify the promisee for the promisee's negligence or intentional acts or omissions is against public policy and is void and unenforceable."

Great Plains argues that the trial court erred by holding that the contract's indemnification provision was void and unenforceable. The trial court held that Great Plains was a third-party beneficiary to the contract between K Building and Weitz. K Building does not appeal this decision. The trial court also held that the contract was a "construction contract" so that K.S.A. 2020 Supp. 16-121 applies, and both parties agree. Thus, the sole disputed issue is whether the promisor, K Building, agreed to indemnify the promisee, Great Plains, for Great Plains' own negligence.

K Building claims that the indemnification provision promises too much, making it unenforceable. Again, section 0.5.21 of K Building's contract with Weitz states as follows:

> "The undersigned Subcontractor or Supplier ('Subcontractor'), and for its officers, directors, members, employees, agents and assigns, in consideration for its use of equipment (including, but not limited to, scaffolding) ('Equipment') provided by Contractor or others, hereby releases, waives and discharges Contractor and the Project Owner, and each of their respective affiliates, agents, officers, employees, insurers, sureties *and other subcontractors and suppliers* (collectively, the 'Released Parties') from any and all claims, losses, costs including attorneys' fees, damages, injury, death, expenses, and liability arising out of, relating to or in connection with the Subcontractor's use of the Equipment. Subcontractor further agrees, *to the maximum extent allowed by applicable law*, to defend, indemnify, and hold harmless the Released Parties from any and all claims by whomsoever made, losses, costs including attorneys' fees, damages, injury, death, expenses, and liability arising out of, relating to or *in connection with any acts or omissions of, or use of the Equipment by, the Subcontractor or the Subcontractor's Agents, servants or employees, and regardless of the active or passive negligence or contribution by the Released Parties*. The Subcontractor represents and

10

affirms that it has or has caused the Equipment to be fully inspected and acknowledges that the Equipment is in good and safe operating condition and repair and accepts the Equipment in its present condition and repair including latent or hidden defects, if any. . . . *In the event any portion of this release and indemnity is held to be invalid, it shall be interpreted so as to allow the fullest release and indemnity permitted by law*." (Emphases added.)

K Building argues that Weitz, the general contractor, was trying to obtain the broadest indemnity possible from K Building, which ultimately violated the Kansas anti-indemnity statute, K.S.A. 2020 Supp.16-121(b). It asserts that K Building would have to indemnify all released parties from any claims arising from use of the equipment, no matter who was at fault. K Building contends that the contract would require it to indemnify Great Plains even if an accident occurred with the lift and K Building operated the lift perfectly. For example, Great Plains could be entirely at fault by failing to maintain the lift and parking it in a dangerous location, causing the accident. In that event, K Building argues that it would still be liable because the accident arose out of its "use of the Equipment" and the indemnification provision applies "regardless of the active or passive negligence or contribution by" Great Plains.

While K Building's reading of the contract language is correct, Great Plains counters with two arguments. One has merit and the other does not. Great Plains' meritless argument is that the phrase "arising out of, relating to or in connection with any acts or omissions of [K Building]" has a causative meaning. Great Plains asserts that the phrase signals that the indemnification provision is only triggered if K Building's actions or inactions cause injury. This argument is unpersuasive. The phrase is *not* causative in meaning and, furthermore, this reading is belied by the later expression "regardless of the active or passive negligence" of other parties. The language makes clear that K Building is responsible, no matter who is at fault. If the analysis stopped there, the provision would violate K.S.A. 2020 Supp. 16-121(b).

11

But, as Great Plains correctly points out, the provision contains two clauses which Great Plains calls "safe harbor" clauses. First, K Building "further agrees, *to the maximum extent allowed by applicable law*, to defend, indemnify, and hold harmless" Great Plains. Second, the provision ends by stating that if it is invalid, then the indemnification provision "shall be interpreted so as to allow the fullest release and indemnity permitted by law." Thus, this contract provision, when read in conjunction with K.S.A. 2020 Supp. 16-121(b), limits K Building's indemnity obligations.

The contract is clearly a multi-state contract. For example, section 8.4.1 specifies that it applies to projects located in the State of Arizona. Section 8.4.1(b) states that it, and not subsections 8.4.1(a), (c)-(f), applies to projects in the State of California. Section 8.4.1(f) applies in several jurisdictions, including Kansas. With this in mind, other provisions such as the one at issue here, section 0.5.21, were drafted with the knowledge that they will apply to different projects across different jurisdictions. In jurisdictions with no anti-indemnity statutes, K Building's liability may be larger, requiring it to indemnify released parties even when K Building was not negligent. But the safe harbor provisions allow K Building's liability to shrink to fit applicable law. Because Kansas law does not allow K Building to indemnify Great Plains for Great Plains' negligence, K Building's obligation is limited to indemnifying its own negligence. See *St. Paul Surplus Lines Insurance Co. v. International Playtex, Inc.*, 245 Kan. 258, 274, 777 P.2d 1259 (1989) (holding that the express terms of an insurance contract did not cover punitive damages because it insured punitive damages "to the maximum extent allowed by law" and Kansas law prohibited insurance on punitive damages).

Thus, K.S.A. 2020 Supp. 16-121(b) does not render the indemnification provision void and unenforceable. Instead, the language of the contract caps K Building's liability at the statutory limit. K Building's liability can only extend as far as its own share of negligence in the underlying tort.

At oral argument, Great Plains took care to note that it had a tort claim and a contract claim. Great Plains argued that K Building, as a joint tortfeasor, had an obligation to pay for its share of negligence under comparative implied indemnity. And Great Plains further argued that K Building, as a contracting party, had an obligation to pay beneficiaries for its share of negligence under the contract's indemnification provision. But this is a distinction without a difference. Whether K Building would owe because of a negligence tort or because of a contractual obligation, a fact-finder must still determine K Building's share of negligence.

The difficulty Great Plains has with its contractual indemnification claim is that it cannot show the extent of negligence which K Building has indemnity liability for. No determination of liability exists, so Great Plains is asking for a remand to determine each tortfeasor's share of liability. But the one-action rule bars this court from granting the requested relief.

*Is Great Plains barred from recovery under the one-action rule?*

Great Plains and K Building miss the trees for the forest. That is, they argue a mass of unresolved and overlapping issues. But focusing on each issue individually shows that one is both dispositive and simple. Great Plains cannot prevail on indemnification in this suit because the one-action rule bars its recovery. Because the trial court was right for the wrong reasons, we affirm its grant of summary judgment to K Building.

The principles of the summary judgment rule have been outlined as follows:

> "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the

13

evidence in favor of the party against whom the ruling [is] sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts is de novo. [Citation omitted.]" *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

If a trial court reaches the correct result, its decision will be upheld even though it relied on the wrong ground or assigned erroneous reasons for its decision. See *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015).

Great Plains argues in its brief that it has properly asserted a tort claim of comparative implied indemnity. But Great Plains cannot recover on its claim. It comes down to this:

"'[D]efendants seeking to minimize their liability in comparative fault situations not involving a chain of distribution or similar commercial relationship [must] do so by comparing the fault of other defendants in order to reduce their own share of liability and damages. If a defendant chooses to settle and obtain release of common liabilities involving other parties whom the plaintiff did not sue, the defendant does not have an action for comparative implied indemnity or post-settlement contribution. This holding recognizes that under Kansas comparative fault procedure such a remedy is not necessary, and further recognizes that such an action defeats the policy of judicial economy, multiplying the proceedings from a single accident or injury.'" *Dodge City Implement, Inc. v. Board of Barber County Comm'rs*, 288 Kan. 619, 637, 205 P.3d 1265 (2009) (quoting and endorsing *Dodge City Implement, Inc. v. Board of Barber County Comm'rs*, 38 Kan. App. 2d 348, 363, 165 P.3d 1060 [2007]).

This requirement, called the "one-action rule," traces its origin to Kansas' adoption of comparative negligence. See *Dodge City Implement, Inc.*, 288 Kan. at 625, 629. In

14

1974, the Kansas Legislature implemented K.S.A. 60-258a, abolishing joint and several liability and replacing it with comparative liability, in which each tortfeasor bears a loss in proportion to its share of the total fault. K.S.A. 2020 Supp. 60-258a(d); *Brown v. Keill*, 224 Kan. 195, 203-04, 580 P.2d 867 (1978).

The joinder provision at K.S.A. 2020 Supp. 60-258a(c) reads as follows:

> "*Joining additional parties.* On motion of any party against whom a claim is asserted for negligence resulting in death, personal injury, property damage or economic loss, any other person whose causal negligence is claimed to have contributed to the death, personal injury, property damage or economic loss, must be joined as an additional party."

The Legislature intended "to impose individual liability for damages based on the proportionate fault of all parties to the occurrence." *Brown*, 224 Kan. at 207.

To give effect to this legislative intent, our Supreme Court interpreted K.S.A. 60-258a(c) to require accounting for the liability of all tortfeasors, even those who might be immune, unknown, or unavailable. See *Dodge City Implement, Inc.*, 288 Kan. at 625. Our Supreme Court distinguishes between parties to the occurrence and parties to the litigation as follows:

> "[W]e conclude the intent and purpose of the legislature in adopting K.S.A. 60-258a was to impose individual liability for damages based on the proportionate fault of all parties to the occurrence which gave rise to the injuries and damages even though one or more parties cannot be joined formally as a litigant or be held legally responsible for his or her proportionate fault." *Brown*, 224 Kan. at 207.

And when the parties are joined, tortfeasors must assert claims against each other in that action rather than file a separate action.

15

"[A]ll persons who are named as parties and who are properly served with summonses are bound by the percentage determination of causal negligence. Because the statute contemplates that each party has a right to cross-claim against any or all other parties to a lawsuit, . . . any party who fails to assert a claim against any other party in a comparative negligence action is forever barred. A corollary rule naturally follows that a person who has not been made a party to a comparative negligence case should not be bound by a judgment therein, even though his causal negligence may have been determined." *Eurich v. Alkire*, 224 Kan. 236, 238, 579 P.2d 1207 (1978).

In *Kennedy v. City of Sawyer*, 228 Kan. 439, 618 P.2d 788 (1980), cattle died from an herbicide which contained arsenic. The cattle owners sued the City of Sawyer and a city councilman for spraying the herbicide at the border of the city's land and the cattle pasture. The city and the councilman filed a third-party complaint against the herbicide's distributor who, in turn, sued the manufacturer. The trial court granted motions to dismiss the distributor and manufacturer.

The city and the councilman appealed the third-party dismissals. During the appeal process, the city settled with the cattle owners. The *Kennedy* court held that the city could recover from the distributor and manufacturer a portion of the settlement that the city had paid out. So the *Kennedy* court reversed the order dismissing the third parties, stating the following:

"Of course, to satisfy the legislative intent of encouraging resolution of all issues in a single action, the comparison of fault of all wrongdoers should be effected in the original action. *Eurich v. Alkire*, 224 Kan. 236, 579 P.2d 1207 (1978). It must be recognized that the procedural mechanism of K.S.A. 60-258a(c) exists to facilitate joinder (and hence comparison) of all potential wrongdoers and may supersede the third-party mechanism which formerly provided the only means for securing a consideration of the fault of a wrongdoer who plaintiff chose not to sue." 228 Kan. at 460.

16

The *Kennedy* court determined that the defendant/third-party plaintiff's claims against the joined tortfeasors could exist independently of the original claims. "The maintenance of a claim by plaintiff against a joined party is not a prerequisite to securing comparison." 228 Kan. at 460. But the *Kennedy* court maintained that a defendant had an obligation to assert its claims against third parties. The court held: "In the present case where the amount of the damages were not fixed by judicial proceedings, but by compromise and settlement between plaintiff and defendants, it will be the duty of the defendants to bring into the action all tortfeasors against whom comparative liability through indemnity is sought." 228 Kan. at 460-61. By holding that the trial court erred in dismissing the third parties, the *Kennedy* court established that issues of liability and indemnity should all be decided in one action comparing fault.

But *Kennedy* suffered from an idiosyncrasy which makes it unique. See *Dodge City Implement, Inc.*, 288 Kan. at 628 (calling *Kennedy* "awkward" because it straddled across a statutory change). The comparative negligence statute, K.S.A. 60-258a, became effective in 1974. Even though the cattle in *Kennedy* died of arsenic poisoning in 1975, the change in the law was still relatively new. None of the parties mentioned comparative negligence in any pleading or during later arguments on motions. And the trial court dismissed the city's third-party indemnification claims based on principles set forth in *Russell v. Community Hospital Association, Inc.*, 199 Kan. 251, 428 P.2d 783 (1967). The trial court erred in applying *Russell* because it predated the statutory change. Thus, defendant City of Sawyer tried to join all tortfeasors but failed because the trial court (wrongly) dismissed the third parties. The *Kennedy* court had to remand for the third parties to be joined again.

Similarly, the parties here did not argue the one-action rule to the trial court. K Building's summary judgment motion argued that Great Plains did not state a valid claim for comparative implied indemnity. K Building even cited *Kennedy*. But the focus of K Building's argument was that Great Plains failed to show that the settlement paid by

Great Plains had benefited K Building. Great Plains responded that it had a claim of comparative implied indemnity, also citing *Kennedy*. But the parties did not discuss whether such a claim must be brought in the original action or whether it can be asserted in a separate, second action. The trial court can hardly be faulted for failing to weigh an argument never presented to it. Nevertheless, the trial court would have been correct to grant summary judgment based on the one-action rule.

The one-action rule arose again a year after *Kennedy*, but without the question of third-party defendants. Instead, a plaintiff tried to bring an action twice. Glynn Albertson won a lawsuit against another driver for injuries that Albertson suffered in a car accident. After the judgment was satisfied, Albertson filed a second suit against Volkswagenwerk Aktiengesellschaft (Volkswagen) in federal court, alleging injuries and damages caused by a defective product but arising from the same collision. In *Albertson v. Volkswagenwerk Aktiengesellschaft*, 230 Kan. 368, 369, 634 P.2d 1127 (1981), our Supreme Court answered the following certified question from the federal court:

> "'Having once obtained a satisfied judgment for a portion of his injuries in a comparative negligence action, may a plaintiff bring an action to recover damages for the remaining portion of his injuries against a defendant not a party to the first action, such second action being based on strict liability in tort?'"

The *Albertson* court answered with a firm "no" when it stated the following:

> "The action is over. Volkswagen could have been sued in state court but plaintiff chose not to join the corporation for strategic reasons. Albertson is bound by that decision. Under the doctrine of comparative fault all parties to an occurrence must have their fault determined in one action, even though some parties cannot be formally joined or held legally responsible. Those not joined as parties or for determination of fault escape liability." 230 Kan. at 374.

18

This court and our Supreme Court have cited the one-action rule as originating with *Albertson*. See *Mick v. Mani*, 244 Kan. 81, 90, 766 P.2d 147 (1988); *Tersiner v. Gretencord*, 17 Kan. App. 2d 551, 553, 840 P.2d 544 (1992). But *Albertson* itself is of limited value here because it is procedurally different. Albertson, as the injured party, was the plaintiff in the first suit against the other driver. Then, Albertson was again the plaintiff in his suit against defendant Volkswagen.

Trokey, the injured party, is not part of this suit. Instead, the defendant in the original negligence suit, Great Plains, now asserts a claim against another tortfeasor. Therefore, one-action rule cases which are most helpful for review here are the cases involving liable tortfeasors filing claims against other tortfeasors.

Union Pacific Railroad Company (Union Pacific) filed third-party claims in *Ellis v. Union Pacific R.R. Co.*, 231 Kan. 182, 643 P.2d 158 (1982). An automobile-train collision killed three occupants of the automobile and injured the driver. In the ensuing action for damages, defendant Union Pacific joined the City of Onaga, Mill Creek Township, and Pottawatomie County, asserting that expert conclusions showed possible liability from these government entities. The plaintiffs did not assert any claims against these governmental third-party defendants. These defendants argued that they were joined solely for determination of fault. The trial court agreed, finding that no one in the lawsuit sought recovery of monetary damages from the government entities. This lack of monetary damages is key to understanding the *Ellis* court's ruling.

After Union Pacific settled with the plaintiffs, it sought comparative implied indemnity or contribution against the government defendants. The *Ellis* court clarified that the correct term for the action is postsettlement contribution. 231 Kan. at 184. The *Ellis* court ruled that the government entities would not have settled or contributed to a settlement because they had no liability in the suit. Neither the plaintiff nor the defendant/third-party plaintiff had sought monetary damages against these third-party

19

defendants. "The settling defendant cannot, however, create liability where there is none." 231 Kan. at 192. Union Pacific could not seek contribution for settling a claim on behalf of the government entities because no one in the suit could have recovered from those entities.

Similarly, the defendant railroad in *Gaulden v. Burlington Northern, Inc.*, 232 Kan. 205, 654 P.2d 383 (1982), asserted a claim against another tortfeasor. Sylvester Gaulden injured his right knee in a crossing accident when he jumped clear to avoid being struck by a pickup truck. Gaulden brought an action in damages against the railroad and the pickup truck driver. The railroad asserted a cross-claim against the driver. Gaulden settled his claim with the driver, but the railroad did not settle its cross-claim with the driver.

The *Gaulden* court held that the trial court erred in dismissing the railroad's cross-claim. Instead, it should have submitted the driver's fault to the jury. The *Gaulden* court held as follows:  "[T]he causal fault or negligence of all parties, including the contributory negligence of the plaintiff and the negligence of the carrier and any third parties, should be submitted to the jury and the percentage fault of each determined in one lawsuit." 232 Kan. at 214. The right to seek contribution or comparative implied indemnity "does not depend upon whether a claim is asserted against the third party by the injured employee." 232 Kan. at 214. That is, one tortfeasor is not at the mercy of the plaintiff's choice of defendants. Instead, K.S.A. 2020 Supp. 60-258a allows defendants to join additional tortfeasors. In fact, the *Gaulden* court phrased it as a requirement:

> "In order to assert its right against a third party, a carrier must bring the third party into the lawsuit, by means of K.S.A. 60-258a(c) or otherwise (if the third party is not already in the lawsuit), and must assert a claim for contribution or 'comparative implied indemnity' against the third party before the running of the statute of limitations, so that the third party will be aware that he or she may be subjected to monetary liability and can appear and defend against such claim. Mere joinder of a third party under K.S.A. 60-

20

258a(c) is not enough, as pointed out in *Ellis*; in addition to joinder, a claim must be asserted against the third party." 232 Kan. at 214.

And defendant Teepak, Inc. sought postsettlement contribution when a sausage casing made by Teepak obstructed Carl Baise's small intestine. *Teepak, Inc. v. Learned*, 237 Kan. 320, 699 P.2d 35 (1985). Baise sought medical treatment and Dr. George Learned performed surgery, removing two-thirds of Baise's small intestine. Baise sued Teepak for its faulty sausage in the United States District Court for the Western District of Missouri and Teepak settled. Teepak sought indemnity against Dr. Learned in Kansas, alleging medical malpractice.

Teepak encountered the same problem that Union Pacific had in *Ellis*. It could not create liability where there was none. Baise had never asserted a medical malpractice claim against Dr. Learned, so Dr. Learned had no liability to the original plaintiff. And Teepak served a third-party complaint against Dr. Learned but settled before he filed an answer. The *Teepak* court stated the legal issue before it twice, back-to-back. Although a bit redundant, the court's precise wording is useful for analyzing Great Plains' claim here:

> "The basic question before us may be stated in general terms as follows: Whether or not, under the principles of comparative negligence, a defendant tortfeasor causing the initial injury to the plaintiff may settle with the injured plaintiff *and then* seek indemnification, or contribution, *in a separate action*, from another person whom the tortfeasor contends is a 'subsequent' tortfeasor causing part of the injured party's damages even though the injured party never asserted a claim against the 'subsequent' tortfeasor.
>
> "In specific terms the question may be stated as follows: Whether or not the Kansas law of comparative negligence permits a tortfeasor causing physical injury to a person to settle with the injured person *and then* proceed against a physician whom the tortfeasor (but not the injured party) claims added to the injured party's damages through negligent treatment of the injured party." (Emphases added.) 237 Kan. at 322.

The *Teepak* court held that Teepak's procedural choices barred it from recovery. "Teepak could have brought Dr. Learned into the action as a party whose negligence should be compared with that of Teepak . . . ." 237 Kan. at 325. But Dr. Learned's liability was not at issue in the underlying case when Teepak settled with Baise. The *Teepak* court held that this put Dr. Learned in the same position as the government entities in *Ellis*—no judgment for monetary damages was possible so postsettlement contribution was not possible either.

The *Teepak* court noted a difference between Teepak's claim and the original 1980 case to coin the term comparative implied indemnity, *Kennedy*. The sausage manufacturer had no relationship with the doctor who removed the sausage casing from the patient. But in *Kennedy*, the herbicide manufacturer and the distributor did have a relationship. "Indemnification among those in the chain of distribution arises out of their contractual relationship with each other and *Kennedy* must be read in the context of its factual situation." 237 Kan. at 328. The *Teepak* court felt that the term of "joint tortfeasors" in *Kennedy* did not adequately capture this relationship because it omitted any concept of contractual obligations.

Read in isolation, the *Teepak* court's statement might imply that contracting parties need not follow the one-action rule. Instead, they could maintain indemnification as a separate action. But it is not so. "[K.S.A. 60-258a] comprehensively provides machinery for drawing *all* possible parties into a lawsuit to fully and finally litigate *all* issues and liability arising out of a single collision or occurrence . . . . " (Emphases added.) *Eurich*, 224 Kan. at 237. "It was the intent of the legislature to fully and finally litigate in a single action *all* causes of actions and claims for damages arising out of any act of negligence." (Emphasis added.) *Mathis v. TG & Y*, 242 Kan. 789, Syl. ¶ 2, 751 P.2d 136 (1988).

The *Kennedy* court remanded for a determination of comparative negligence in a single action, whether the parties were merely joint tortfeasors or owed each other

22

contractual indemnification duties. When a contract requires one party to indemnify another for its share of negligence, the underlying tort controls the party's liability. It becomes impossible to determine the extent of the breaching party's contractual liability without also determining its liability in the negligence action. For this reason, the one-action rule applies to all cases comparing fault, whether the action is in tort or in contract, as in *Kennedy*.

The defendant's responsibility to join third-party tortfeasors came up again in *Mathis*. A loose door closure hit the plaintiff on the head as he was leaving a TG & Y store in Wichita. TG & Y stated that it intended to compare its negligence with the negligence of its landlord and a door repair company. But there was some confusion about who the landlord was and who was responsible for the door. Initially, the plaintiff added claims against Jacobs Construction Co., Inc. and G. & J. Investments, Inc. as landlords and Hopper's Mirror and Glass, Inc. for its repair work on the door. When the plaintiff discovered that the actual landlord, Vernon Jacobs, had hired Cheney Door Company, Inc. to maintain the doors, he filed a new suit against Jacobs and Cheney Door Company.

After dismissals in the original suit, TG & Y remained the only defendant. But TG & Y did not join the new defendants of the new suit to compare their fault. Instead, after the second case settled, TG & Y moved to dismiss the original case. TG & Y argued that the plaintiff had split his cause of action by suing the store in one case and the store's landlord and door repairer in a second case. TG & Y claimed that the plaintiff violated the one-action rule. The *Mathis* court ruled that it was in fact TG & Y's responsibility to join tortfeasors to the action. The *Mathis* court stated the one-action rule as follows:

> "K.S.A. 60-258a allows all possible parties to be brought into a single lawsuit, to
> fully and finally litigate all issues and liability arising out of a single occurrence, and to
> apportion the amount of total damages among those parties against whom negligence is

attributable in proportion to each party's degree of fault. All who are named as parties and who are properly served with summonses are bound by the adjudication of the percentage of causal negligence. Because each party has a right to cross-claim against any or all other parties to the lawsuit, any party who fails to assert a claim against any other party in a comparative negligence action is forever barred." 242 Kan. at 791.

The *Mathis* court explained that because the plaintiff settled with or dismissed the defendants in the second suit, those defendants were no longer responsible to the plaintiff. But their percentage of fault could still be determined in the original suit. The *Mathis* court remanded so that the plaintiff could pursue his claim against TG & Y. In doing so, the *Mathis* court reminded TG & Y that it could join other defendants for the purpose of comparing negligence at trial. 242 Kan. at 794.

This court succinctly summarized the central premise of the one-action rule in *Schaefer v. Horizon Building Corp.*, 26 Kan. App. 2d 401, 985 P.2d 723 (1999):

"In order to prevail on a claim for partial indemnity or contribution against a third-party defendant, the settlor must show it actually paid damages on behalf of that third party. If the third party was never at risk of having to pay for its own damages, the settlor cannot show it benefited the third-party defendant, and the value of its contribution claim is zero." 26 Kan. App. 2d 401, Syl. ¶ 2.

Thomas R. and Lisa Ann Schaefer sued housing development Horizon Building Corporation (Horizon) after noticing problems with settling in the structure of their house. Horizon sought comparative implied indemnity against building contractor The Holland Corporation, Inc. (Holland). The *Schaefer* court held that Horizon had no claim because Holland was not a named party or at risk of suit when Horizon settled with the homeowners:

"As a result, Holland was not exposed to liability, and Horizon has not shown that any portion of its settlement expense is attributable to Holland. Further, Horizon has refused

24

to explain why joinder under K.S.A. 60-258a was not available, which would have protected Horizon without exposing Holland to more liability than it faced in the original action. [Citation omitted.]" 26 Kan. App. 2d at 403-04.

The case most like Great Plains' claim here is *Dodge City Implement, Inc*. A collision between a Burlington Northern and Santa Fe Freight (BNSF) train and a truck owned by Dodge City Implement, Inc. (DCI) led BNSF to sue DCI in the United States District Court for the District of Kansas. DCI settled with BNSF and the federal case was dismissed. DCI then filed a second action in Kansas against defendants Barber County and Moore Township under negligence and implied indemnity theories because of an alleged failure to construct and maintain a safe grade crossing.

Our Supreme Court held that under the one-action rule, DCI could not bring a comparative implied indemnity claim against the township and county after settling the railroad's lawsuit when the township and county were not parties to the lawsuit. Such actions would defeat the policy of judicial economy, multiplying the proceedings from a single accident or injury. Our Supreme Court summarized its holding as follows:

> "The fact that DCI and [its employee] chose to settle BNSF's claim did not entitle them to status as a clearing house for comparison of fault among potential tortfeasors. They were not entitled to bring a second action against the County and the Township, when the County and the Township had no involvement in the federal case." 288 Kan. at 637.

Finally, Great Plains cites the explanation of comparative implied indemnity from *Watco Companies, Inc. v. Campbell*, 52 Kan. App. 2d 602, 371 P.3d 360 (2016). Great Plains incorrectly claims that if settlement occurs before a timely comparative fault determination is made, then "'the settling tortfeasor may then and in that event file an action in court to have the degrees of responsibility among joint tortfeasors determined, damages assessed and apportionment decreed among them.'" 52 Kan. App. 2d at 611. But Great Plains misreads the *Watco* court's statement of the one-action rule. The *Watco* court

25

held that if a tortfeasor settled before a "comparative negligence action *has been filed*," then the settling tortfeasor may file an action. (Emphasis added.) 52 Kan. App. 2d at 610-11. That is, if an injured party settles with a tortfeasor rather than filing a claim, then that tortfeasor may file a claim against other tortfeasors. Under this rule, either the injured party files an action or the settling tortfeasor files an action. Both scenarios preserve the one-action rule.

Significantly, the missing element in *Dodge City Implement, Inc.* was present in *Watco Companies, Inc.* The *Watco* court held that Watco Companies, Inc. (Watco) had preserved its claim for comparative implied indemnity. The *Watco* court would allow Watco to proceed precisely because it made a timely claim against the third-party defendants in the original negligence action. 52 Kan. App. 2d at 610-11, 614-16 (citing the one-action rule and holding that Watco complied with it, but ultimately ruling that Watco could not recover for separate reasons). The comparative fault of Watco and the third-party defendants was not determined in the original action because the federal court, in its discretion, declined to exercise supplemental jurisdiction over the claims. So, the difference between *Dodge City Implement, Inc.* and *Watco Companies, Inc.* is that DCI did not assert third-party claims in the original action, but Watco did assert its claims in the original action.

Before the trial court, K Building cited *Dodge City Implement, Inc.*, *Schaefer*, *Ellis*, and *Kennedy*. But its citations were in service of its argument that Great Plains had no valid claim of comparative implied indemnity, which would be a question appropriately answered in the original suit. Conversely, Great Plains cited *Kennedy*, *Ellis*, *Schaefer*, and *Watco Companies Inc*. But Great Plains did not anticipate the one-action rule and present arguments to the trial court for why it should not be applied. The parties had all the relevant precedents before them, but seemingly missed the issue. Again, the trial court can hardly be faulted for failing to consider an argument that the parties never raised.

In sum, Great Plains cannot settle a comparative negligence claim and then file a new action to litigate comparative negligence with entities not part of the original suit. Instead, the one-action rule required Great Plains to join tortfeasors to the original suit. This is true regardless of the reason for comparing negligence. In *Kennedy*, some parties had contractual relationships requiring indemnification. In more recent cases, parties had no relationship other than they each contributed to the same tort. But the relevant question is not whether an action derives from tort law or contract law. The relevant question is whether the fact-finder must compare fault. If so, fault must be compared in one action. Because the one-action rule bars recovery here, we affirm the trial court as right for the wrong reasons.

Before turning to the next issue, it is important to discuss why the one-action rule applies here despite complications. Great Plains' weakest argument comes in its reply brief when it asserts that K Building could not have been a party to the underlying suit. In fact, Great Plains claims that K Building told the trial court that it could not have been a party because of workers compensation exclusivity. The record shows that this statement is imprecise. Trokey was K Building's employee, and Trokey could not assert a claim against K Building, which is what K Building told the trial court. But K Building could be part of the suit as a third-party defendant, even if Trokey could not make a claim directly against his employer. Great Plains' suggestion that K Building could not be a party to the original suit is counter to the law.

Great Plains itself provides the citations necessary to refute its argument. Great Plains argues that, when employees are barred from suing their employers for on-the-job injuries, employees can seek damages from a third party and the third party can seek indemnification damages from the employer. Kansas law enforces contractual indemnity obligations between employers and third parties. Great Plains gives the example of *Estate of Bryant v. All Temperature Insulation, Inc.*, 22 Kan. App. 2d 387, 916 P.2d 1294 (1996).

John R. Bryant was injured in a construction accident while employed by Foley Company (Foley). Bryant did not sue his employer Foley, but instead sued APAC-Kansas, Inc. (APAC), alleging negligent operation of a crane. APAC joined Foley as a third-party defendant, alleging that Foley was contractually bound to hold APAC harmless. The *Bryant* court held that Bryant, as a Foley employee, could not have recovered from Foley, but APAC could. The *Bryant* court held that workers compensation exclusive remedy provisions did not bar third-party claims against an employer when those claims were based on an express indemnification agreement. 22 Kan. App. 2d at 395-96.

In short, *Bryant* shows that Great Plains could have brought a claim against K Building in the original action, even if Trokey could not sue K Building. Great Plains also cites *McCleskey v. Noble Corp.*, 2 Kan. App. 2d 240, 244, 577 P.2d 830 (1978), for the holding that an employer can be liable to a third party if it has an independent contractual duty to that party. But Great Plains only succeeds in arguing against itself. The one-action rule bars Great Plains from bringing a second action to litigate comparative negligence against a tortfeasor not a party to the original action.

In *Bryant*, the liable tortfeasor brought its contractual indemnity claim against the employer in the original action. In *McCleskey*, the liable tortfeasor brought its indemnity claim against the employer in the original action. In neither case did the liable tortfeasor file a new action to assert its claim against the employer. *Bryant*, 22 Kan. App. 2d at 388; *McCleskey*, 2 Kan. App. 2d at 246 (affirming the trial court's decision to dismiss the employer "'except that [it] is to remain a party to this action in accordance with the provisions of K.S.A. 60-258a for the purpose of assessment, determination and comparison of the negligence attributable to the respective parties'"). As a result, the one-action rule did not arise in *Bryant* or *McCleskey* because there was only one action. If Great Plains was liable to Trokey, and K Building had to indemnify Great Plains for K Building's share of negligence, then all such claims should have been determined in

28

one action through adjudication or settlement. In its briefs, Great Plains provided no legal reason it could not bring its claims against K Building in the original action.

But at oral argument, Great Plains stated without citation that Missouri cases have reached a different outcome from the Kansas cases *Bryant* and *McCleskey*. Great Plains told the court that it dismissed the claims against K Building because Missouri courts have interpreted workers compensation exclusivity as barring a suit from the injured employee, like Trokey, and also third parties, like Great Plains. Thus, any claims that Great Plains took to trial against K Building would be defeated by workers compensation exclusivity. Assuming that this uncited difference between Kansas and Missouri law is correct, then Great Plains' recourse is to the Missouri Court of Appeals and potentially the Missouri Supreme Court. Instead, Great Plains, a Missouri corporation sued in its home state, predicted an unfavorable outcome and sought refuge under the more favorable law of a neighboring state.

But Kansas' one-action rule discourages multiplying proceedings from a single occurrence even across jurisdictions. In *Mick*, our Supreme Court explained that the one-action rule is statutory at its heart. "The one-action rule is not an extension of the doctrine of res judicata but the result of legislation. In *Eurich*, we held that by the enactment of [K.S.A.] 60-258a the legislature intended that henceforth all negligence claims arising out of one occurrence must be determined in one action." 244 Kan. at 95. Despite the rule arising from a Kansas statute, application of the rule is not limited to Kansas cases. That is, the rule bars filing a second action in Kansas even when the first action was in another jurisdiction. In *Dodge City Implement, Inc.*, the original action was in the United States District Court for the District of Kansas. 288 Kan. at 621. In *Teepak*, the original action was in the United States District Court for the Western District of Missouri. 237 Kan. at 321. In both cases, the settling defendant could not file a new claim in Kansas against a tortfeasor not subject to liability in the original case.

But the one-action rule does not demand the impossible. If a plaintiff cannot bring all tortfeasors into the original action, then a new claim can be filed in Kansas. In *Anderson v. Scheffler*, 242 Kan. 857, 752 P.2d 667 (1988), our Supreme Court allowed a plaintiff to maintain a second suit. Jacob Anderson, age 19, was pouring poultry meal into an auger pit at Badger By-Products (Badger), a division of Beatrice Companies, Inc. (Beatrice). Anderson's leg slipped through the grate into the pit, where the auger severed his leg above the knee. Anderson sued Badger for his amputated leg. Because Anderson was a Missouri resident, Badger successfully removed the case to federal court on diversity jurisdiction. Anderson moved to amend his petition to join additional defendants including Beatrice and the Missouri company that sold the auger to Badger, Industrial Bearing and Transmission Company, Inc. (IBT). Anderson also moved to remand the case to state court. The federal trial court denied Anderson's motion to add IBT as a defendant because to do so would destroy diversity jurisdiction. The federal court allowed Anderson to add the other defendants and proceed with the case, which eventually settled. Our Supreme Court allowed Anderson to bring a second suit against IBT in Kansas because he "did everything he could to preserve his lawsuit against IBT and [its employee]." 242 Kan. at 865; see also *Rodina v. Castaneda*, 60 Kan. App. 2d 384, 391-92, 494 P.3d 172 (2021) (holding that a plaintiff who was unable to recover on a default judgment could bring a second suit against an additional tortfeasor because no judicial determination of fault was made in the original suit). But Great Plains has not shown that it was barred from joining K Building to the original suit legally.

Factually, Great Plains did join K Building to the original suit. Then Great Plains voluntarily dismissed its claims against K Building. After K Building was no longer part of the original action, Great Plains settled that original action with Trokey. Because Great Plains could have compared the fault of all tortfeasors in one action but chose not to, the one-action rule bars Great Plains from seeking to litigate comparative fault in a separate action, whether fault must be compared under tort law or to determine the extent of K Building's contractual indemnity liability.

30

*Does public policy encourage this type of settlement?*

Great Plains shows how important the one-action rule is when it argues that public policy encourages settlements. But Great Plains cites *Ellis*, among other cases, for this proposition. And the relevant language from *Ellis* is the following: "Settlements are favored in the law. The settling defendant cannot, however, create liability where there is none. [Citations omitted.]" 231 Kan. at 192. K Building could not have been liable in the original suit because Great Plains dismissed its claims against K Building.

Great Plains argues that summary judgment here will have a chilling effect on settlements. It asserts that parties will hesitate to settle any claims if they are barred from seeking indemnification from a party separately at fault for causing injury. But this discussion comes back to the trial court decision affirmed by the *Dodge City Implement, Inc.* court. In that case, the trial court stated the following:

> "'[T]he defendants herein were not named defendants or joined pursuant to K.S.A. 60-258a(c) in the previous federal lawsuit brought by Burlington Northern and Santa Fe Railway Co. and . . . it would be unfair to defendants herein to subject them to allegations of fault now that were not asserted in the federal case.'" 288 Kan. at 623.

The *Dodge City Implement, Inc.* court agreed with the trial court, saying that such an action would defeat the policy of judicial economy, multiplying the proceedings from a single accident or injury. 288 Kan. at 637. Great Plains could have brought, and did bring, all claims into a single proceeding. By dismissing its claims against K Building and filing the current action after it settled with Trokey, Great Plains multiplied the proceedings from a single accident or injury. And Great Plains does not explain why it did so in either its initial brief or its reply brief.

In sum, Great Plains negotiated a settlement at a time when K Building would have had no liability if the case had gone to trial. No action was pending against

31

K Building, and it did not participate in settlement negotiations. Now Great Plains seeks postsettlement contribution from K Building based on K Building's share of liability. Great Plains also asserts that a genuine issue of fact exists on the relative negligence of Great Plains and K Building and seeks a remand to determine comparative negligence. Throughout its brief, Great Plains intimates that K Building's share of negligence could be as high as 100%, making K Building liable for the entire settlement amount. If Great Plains is correct, then Great Plains negotiated a settlement with K Building's money. Public policy does not encourage such settlements.

*Did Great Plains seek indemnification for its own negligence?*

Great Plains argues that the trial court was incorrect in saying that Great Plains seeks indemnification for its own negligence. Great Plains states that the settlement agreement did not contain an admission of liability and the trial court did not find that Great Plains was negligent or liable. K Building contends that a finding of negligence is irrelevant because Great Plains was the only defendant when it settled with Trokey. Thus, according to K Building, the only issue resolved by the settlement was Great Plains' potential liability on Trokey's negligence claim.

Great Plains cannot evade a judicial determination of fault by settling in the original action, only to request a judicial determination of fault by filing a new action. The *Dodge City Implement, Inc.* court rejected a similar move from DCI, stating the following:

> "'[A]s the one-action rule has evolved, the courts have seemingly developed a preference for permitting *plaintiffs* to pursue a second suit against defendants not party to the original action. . . . "[A] *plaintiff* may pursue separate actions against tortfeasors where there has been no judicial determination of comparative fault. Thus, the exceptions to the one-action rule arise when there has been no prior judicial determination of fault."' (Emphasis added.)

32

"'. . . DCI cites no authority for its suggestion that this exception to the one-action rule may be extended to defendants.' [Citations omitted.]" 288 Kan. at 635-36 (quoting *Mick*, 244 Kan. at 93).

Great Plains similarly cites no authority for extending the one-action rule to defendants. Instead, Great Plains faults K Building for not pointing to any rule requiring Great Plains to bring all claims into Trokey's original negligence suit in Missouri. But the one-action rule, with its self-explanatory name, is the rule requiring Great Plains to bring all claims into the original action. By failing to bring its claims in the first suit, Great Plains triggered the one-action rule which bars it from bringing a second suit in Kansas. When 19-year-old Jacob Anderson could not join all potential tortfeasors for the loss of his leg, the *Anderson* court allowed him to bring a second suit against tortfeasors not in the original action. 242 Kan. at 865. When Curtis Rodina learned the identity of the dentist who had caused $85,000 in economic damages and $200,000 in noneconomic damages, the *Rodina* court allowed him to bring a second suit. 60 Kan. App. 2d at 391-92. In both cases, the plaintiffs were entitled to a judicial determination of comparative fault where there was no such determination in the original action. It is readily apparent that those plaintiffs would have suffered an injustice if the courts had barred them from seeking adequate recovery. But Great Plains fails to show that this exception should allow it to bring a second suit, particularly when it brought and then voluntarily dismissed the same claims in the original suit. Simply put, Great Plains is not a good candidate for applying any exceptions to the one-action rule.

Also, Great Plains asserts that its right to indemnification would not begin to run until it became obligated by judgment or settlement to pay the original plaintiff. Great Plains cites *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 456, 827 P.2d 24 (1992). But *Barbara Oil* involved the purchase and sale of natural gas, with plaintiffs claiming that the defendant breached "take or pay" contracts by not buying a minimum amount of gas. Comparative negligence was not at issue, which is the crux of the one-

action rule. A fact-finder would need to determine K Building's comparative fault in Trokey's accident to determine its indemnity liability, making this case unlike *Barbara Oil*. Further, the *Barbara Oil* court stated when the statute of limitations would bar an indemnity claim, not when the right to indemnity would begin. Finally, Great Plains in fact did bring claims of indemnification and contribution against K Building in the original Missouri suit. Great Plains' brief fails to expand on its statement and does not explain how its indemnification claim would not have been ripe. Great Plains' argument is inadequately briefed. Issues not adequately briefed are deemed waived or abandoned. *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018).

Great Plains claims that the effect of going to trial in Missouri as the only defendant was that it could be obliged to pay a judgment which included its own negligence, if any, and K Building's negligence, if any. Great Plains provides a long discussion of the difference between Kansas comparative fault and Missouri comparative fault. Great Plains includes select Missouri jury instructions in its brief and cites *Teeter v. Missouri Highway & Transp. Comm'n*, 891 S.W.2d 817, 821 (1995). Great Plains asserts that, in Missouri, fault is only apportioned between the parties at trial. Nonparties are excluded.

Great Plains is incorrect that the defendant in *Teeter* bore the burden of the full judgment because settlement credits reduced the judgment. In *Teeter*, parents brought a wrongful death suit after a car accident killed their daughter. Two defendants settled, leaving the Missouri Highway and Transportation Commission (MHTC) as the only defendant. The jury returned a verdict of $500,000 and found MHTC to be 10% at fault. As described by Great Plains, this would mean that MHTC should be liable for $500,000.

But Great Plains omits an important point. MHTC received a credit for the settlement agreements of the other tortfeasors. Because they settled for $48,000, the judgment was reduced to $452,000. The *Teeter* court also noted that MHTC failed to

34

protect its right to contribution from the tortfeasor who was 90% at fault. Missouri maintains contribution actions between jointly and severally liable tortfeasors, whereas Kansas claims of postsettlement contribution depend on comparative fault. The Missouri-style contribution claim died out in Kansas in 1974, with the shift to comparative fault. See *Kennedy*, 228 Kan. at 451 (holding that "contribution among *joint judgment debtors* is no longer needed . . . because separate individual judgments are to be entered"). MHTC went to trial as the only defendant because Missouri law allows "'alleged tort-feasors to buy their peace by good faith settlements with the claimant.'" 891 S.W.2d at 820 (quoting *Lowe v. Norfolk & Western Ry. Co.*, 753 S.W.2d 891, 892 [Mo. Banc 1988]). By settling, the tortfeasor 90% at fault had essentially removed the question of her fault from the suit. Thus, the *Teeter* court held that MHTC, as the lone defendant, was solely liable for the remaining judgment, after deducting the $48,000 from settlements. 891 S.W.2d at 821 (holding that MHTC would pay the full $452,000 if it was an ordinary defendant, but a statutory cap on damages limited the judgment to $100,000).

The distinction between settling and nonsettling tortfeasors was key to the *Teeter* court's reasoning. The United States District Court for the Western District of Missouri explained the distinction in *Millentree v. Tent Restaurant Operations, Inc.*, 618 F. Supp. 2d 1072 (W.D. Mo. 2009). William Travis Stoner left a bar in Independence, Missouri, and hit Leon Millentree with his pickup truck in the bar's parking lot. Millentree sued Stoner for his injuries and sued the bar for serving a visibly intoxicated Stoner in violation of Missouri's dram shop laws. Stoner settled and Millentree proceeded with his claim against the bar.

The bar sought to have Stoner joined as a third-party defendant, arguing that the most efficient way to allocate fault to Stoner would be to permit the jury to find his percentage of fault without adding him as a liable party. The *Millentree* court reviewed *Teeter* and concluded that Missouri law prohibits Stoner from being joined as a defendant, even if only to compare his fault. 618 F. Supp. 2d at 1074-75; see also *Beverly*

*v. Hudak*, 545 S.W.3d 864, 876 (Mo. App. 2018) (holding that fault is only apportioned among those at trial). Stoner had "bought his peace" and was dismissed from the action for all purposes, including allocation of fault, because he had settled with Millentree.

The rule that Great Plains points to is that Missouri juries will not compare the fault of tortfeasors who are not defendants *because they settled*. In Missouri, settling defendants are shielded from any further action by statute. Here, K Building was not a defendant or third-party defendant. But K Building's absence was because the claims were dismissed, not because K Building settled. Great Plains fails to provide caselaw which addresses tortfeasors who are not parties for reasons other than settlement, such as unknown or unavailable tortfeasors. Great Plains' argument simply fails to address the question.

Instead, Great Plains provides two Missouri cases favoring indemnity claims. In *Howe v. Lever Brothers Co.*, 851 S.W.2d 769 (Mo. App. 1993), a worker injured in a fall sued the general contractor and the property owner. The general contractor sued the worker's employer, its subcontractor. The Missouri Court of Appeals held that the indemnity claims were proper. 851 S.W.2d at 773. In *Lone Star Indus., Inc. v. Howell Trucking, Inc.*, 199 S.W.3d 900 (Mo. App. 2006), after a worker was killed in Lone Star's quarry, Lone Star settled with his widow. Lone Star sought indemnification damages from Howell Trucking as a joint tortfeasor. The Missouri Court of Appeals allowed Lone Star's indemnity suit to proceed, holding that an indemnity claim is separate and distinct from the tort claim and may be brought as either a third-party claim or a separate suit. 199 S.W.3d at 907. But Great Plains' citations do little to support its arguments. *Howe* reinforces the one-action rule since all actions were brought in the original suit. The *Lone Star* court's statement that an indemnity suit for negligence may be brought separately represents a difference between Kansas and Missouri law on comparative negligence. And, as a statement from the Missouri Court of Appeals, does not bind Kansas appellate courts.

But if Great Plains would have been liable at trial for Trokey's full damages as the sole defendant, then there is more reason to keep K Building as a third-party defendant. As K Building correctly argues: "[Great Plains] simply could have maintained its claims against K Building in the Missouri lawsuit instead of voluntarily dismissing them. Had [Great Plains] chosen this path, the Missouri jury would have been able to make a determination as to whether K Building was negligent." To the extent that Great Plains could have been liable to pay a judgment including K Building's negligence, this wound was self-inflicted. Because the one-action rule bars Great Plains' attempt to litigate negligence in a second action, we affirm the trial court's summary judgment.

Great Plains brought and then dismissed an indemnification claim against K Building in the original action in Missouri. The one-action rule prevents Great Plains from bringing a second action. Because the trial court properly granted summary judgment for K Building, we affirm summary judgment as right for the wrong reasons.

Affirmed.