(916 P.2d 1294)

No. 73,862

ESTATE OF JOHN R. BRYANT and BARBARA BRYANT, Individually and on behalf of the Heirs at Law of JOHN R. BRYANT, *Plaintiff*, v. ALL. TEMPERATURE INSULATION, INC., *Defendant,* and APAC-KANSAS, INC., *Defendant/Third-Party Plaintiff/Appellant*, v. FOLEY COMPANY, *Third-Party Defendant/Appellee.*

Opinion filed May 17, 1996.

*Anthony F. Rupp*, of Shughart Thomson & Kilroy, P.C., of Overland Park, and *Robert A. Henderson*, of the same firm, of Kansas City, Missouri, for the appellant.

*Katherine C. Opie* and *Hal Pierce*, of Couch, Strausbaugh, Pierce & King, Chartered, of Overland Park, for the appellee.

Before RULON, P.J., LEWIS, J., and JANICE D. RUSSELL, District Judge, assigned.

LEWIS, J.: John R. Bryant was injured in a construction accident in 1992. At the time of his injury, he was employed by Pioneer Electric (Pioneer) and was a statutory employee of Foley Company (Foley).

Bryant filed suit against All Temperature Insulation, Inc., (All Temp), alleging that its negligence was one of the causes of his injuries. He also sued APAC-Kansas, Inc., (APAC), claiming that a crane owned by APAC was negligently operated, thus contributing to his injuries.

APAC joined Foley as a third-party defendant, alleging that Foley was contractually bound to hold APAC harmless from the suit by Bryant. Foley was the general contractor on the project Bryant was working on at the time of his injuries.

After suit had been filed, Bryant died. His estate and his surviving spouse were substituted as parties plaintiff. The crane which was involved in the injuries to Bryant had been leased by Foley from APAC under a written lease agreement. APAC also furnished, under the lease, the operator of the crane, David Powell. The lease agreement between APAC and Foley contained an indemnification clause, which is the focus of this appeal.

The jury returned a damage verdict in favor of Bryant in the amount of $397,534.87. It found All-Temp to have been 92½ percent at fault in causing Bryant's injuries and APAC to have been 7½ percent at fault. The 7½ percent apportionment of fault to APAC caused the trial court to enter judgment against APAC in the amount of $29,815.12. The entire judgment in favor of Bryant has been paid. Consequently, neither Bryant nor All-Temp are parties to this appeal.

After the judgment was entered, APAC sought judgment against Foley for the amount of the judgment and attorney fees and costs

associated with its defense of the action. The claim of APAC against Foley is based upon the lease and indemnification agreement referred to earlier. Both sides filed motions for summary judgment, and the trial court granted summary judgment to Foley and against APAC. APAC appeals.

We reverse, direct that judgment be entered in favor of APAC, and remand for further proceedings.

The trial court's decision was based on uncontroverted facts agreed to by the parties. Foley filed a statement of uncontroverted facts along with the memorandum supporting its motion for summary judgment. APAC conceded all of the material facts set out by Foley in its motion with the exception of Foley's assertion that the crane operator, David Powell, was an employee of APAC at the time of the accident. APAC has continued to deny that Powell was its employee at the time of the accident and argues that question can be decided as a matter of law.

The trial court concluded that the indemnification agreement between APAC and Foley did not require Foley to indemnify APAC. It reached this conclusion citing two basic reasons: (a) the "exclusive remedy" provisions of K.S.A. 44-501; (b) the fact that the agreement itself prohibited APAC from recovering for damages occasioned by reason of its "sole negligence."

The pertinent provisions of the indemnification agreement between APAC and Foley read as follows:

"2. INDEMINIFICATION [sic]: Lessee agrees that the equipment and all persons operating such equipment, including Lessor's employees, become employees of, and are under Lessee's exclusive jurisdiction, supervision and control and agrees to indemnify and save Lessor, its employees and agents harmless from all claims for death or injury to persons, including Lessor's employees, and from all loss, damage or injury to property, including the equipment arising in any manner out of Lessee's operation. Lessee's duty to indemnify hereunder shall include all costs or expenses arising out of all claims specified herein, including all court and/or arbitration costs, filing fees, attorneys fees and costs of settlement.

"Lessee shall not be required to indemnify Lessor for its sole negligence, but, Lessor's liability for damage caused by the sole negligence of Lessor, its agents and employees, hereunder shall be limited to the amount of Lessor's liability insurance.

"3. COMPETENT OPERATION BY LESSEE: Lessee agrees to provide competent and experienced personnel to direct the operation of the equipment and Lessors [sic] employees.

. . . .

"8. PRINCIPAL AGENCY RELATIONSHIP: Unless otherwise provided, personnel furnished by Lessor, shall be employees of customer and the laws of the state wherein this agreement is executed shall govern the principal and agency relationship hereby created."

## STANDARD OF REVIEW

Our standard of review in an appeal wherein summary judgment has been granted in favor of the appellee is as follows:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case." *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260, 891 P.2d 435 (1995).

Although the standard set forth above appears to apply to trial courts, the appellate courts apply the same standard. *Security Benefit Life Ins. Corp. v. Fleming Companies, Inc.*, 21 Kan. App. 2d 833, 836, 908 P.2d 1315 (1995).

The facts on which this case is to be decided were agreed upon by the parties with the one exception set forth above. "When a case is submitted to the trial court on stipulated facts, . . . we are afforded the same opportunity as the trial court to consider the evidence and to determine de novo what the facts establish." *Shade v. Wheatcraft Industries, Inc.*, 248 Kan. 531, 536, 809 P.2d 538 (1991).

## BY WHOM WAS POWELL EMPLOYED?

David Powell was operating the crane at the time Bryant was injured. There is no question but that Powell came with the crane when it was leased by APAC to Foley. Under ordinary circumstances, Powell was a regular everyday employee of APAC. However, as shown above, the lease agreement between the parties

clearly provided that the individual operating the crane would become an employee of Foley and would be under Foley's exclusive "jurisdiction, supervision and control."

The provisions of the indemnification agreement transferring supervision and control of Powell to Foley appear to be clear and without ambiguity. We see absolutely no reason why they should not be enforced.

"The policy of law in general is to permit mentally competent parties to arrange their own contracts and fashion their own remedies where no fraud or overreaching is practiced. Contracts freely arrived at and fairly made are favorites of the law. (*Kansas Power & Light Co. v. Mobil Oil Co.*, 198 Kan. 556, 426 P.2d 60.) None of the parties here involved were neophytes or babes in the brambles of the business world. Both companies, it would appear, dealt in projects involving considerable sums of money; both operated substantial business enterprises; and there is no suggestion that their businesses were not capably managed and profitably operated." *Kansas City Structural Steel Co. v. L. G. Barcus & Sons, Inc.*, 217 Kan. 88, 95, 535 P.2d 419 (1975).

We view the contract between APAC and Foley in much the same manner as the Supreme Court in the *Barcus* case. Absent some very strong indication to the contrary, we believe their agreement should control.

It is true, as Foley argues, that a clause transferring control of one's employee to another employer must be strictly construed against the transferring employer. *Belger Cartage Serv., Inc. v. Holland Constr. Co.*, 224 Kan. 320, Syl. ¶ 3, 582 P.2d 1111 (1978). At the same time, it is clear that unless such a clause is against public policy, unconscionable, or the result of fraud or overreaching, it will be strictly construed and enforced. See *Carson v. Geis Irrigation Co.*, 211 Kan. 406, 411, 507 P.2d 353 (1973); *In re Estate of Shirk*, 186 Kan. 311, 326, 350 P.2d 1 (1960).

We perceive no violation of public policy which would come from the enforcement of the contract in the instant matter. The victim of the negligence has been paid his damages, and his rights are not affected in any way by the dispute between APAC and Foley. The question is whether we will enforce an unambiguous clause in an unambiguous agreement entered into between two consenting parties. In *Belger Cartage Serv., Inc.*, 224 Kan. 320, the

Supreme Court considered a clause very similar to the one involved in this appeal. The court suggests that the following tests be employed:

"In determining the enforceability of any such exculpatory clauses, the trial court may consider the totality of the circumstances surrounding the execution and performance of the contract including, but not limited to, whether the employer to whom the employees were purportedly transferred had knowledge of the clauses by having them pointed out to him or the clauses themselves being conspicuous in the contract; the nature of the work to be performed including the degree of skill required and the degree of risk of harm involved; and the actual performance of the parties." 224 Kan. 320, Syl. ¶ 4.

As we view it, there are two issues to be resolved in determining the enforceability of the agreement:

(1) Did APAC and Foley contemplate the indemnification terms when the agreement was signed?

(2) Does the agreement, strictly construed, transfer the employee status of Powell from APAC to Foley?

There is little in the record concerning the execution of the agreement. The provision in question is on the reverse side of the lease agreement. It is not hidden nor is its value depreciated or accentuated by the size of the type used to print the clause. There are handwritten notations changing the work hours printed in the agreement. Foley does not assert in its pleadings that it did not understand the agreement or that the agreement was procured by fraud or overreaching. Foley does not claim that the clause in question was in any way unconscionable.

Foley was certainly not a "babe in the brambles." It has been in the contracting business for 75 years doing heavy industrial construction. One indication of its business savvy is reflected in the fact that it has filed a cross-claim against All Temp. In that claim, Foley seeks indemnification from All Temp under a clause similar to the one involved in the instant matter.

There is no evidence to indicate that the parties were not fully aware of the agreement transferring control of employees when the agreement was signed. If Foley contended the agreement was unconscionable or that it was not contemplated by the parties, it had the burden to so prove. See *TMG Life Ins. Co. v. Ashner*, 21

Kan. App. 2d 234, 250, 898 P.2d 1145 (1995). It did not do so. We cannot conclude that the indemnification clause was not contemplated by the parties.

The agreement very specifically and unambiguously provides that Powell is to be an employee of Foley. In the agreement, Foley is to assume "exclusive jurisdiction, supervision and control" over Powell. It is questionable whether a transfer of employee status could be said with more clarity or detail. Under the most strict construction we can employ, we conclude that the agreement provides for Foley to be the employer of Powell. Any other construction of that agreement would reduce its terms to an absurdity, which is a situation we seek to avoid. See *Gore v. Beren*, 254 Kan. 418, Syl. ¶ 7, 867 P.2d 330 (1994).

There are no valid reasons *not* to enforce the agreement as written. Under its clear and unambiguous terms, Powell, at the time of the accident, was the employee of Foley, not of APAC.

## SOLE NEGLIGENCE

The agreement provides that Foley has no obligation to reimburse APAC for damages caused "by the sole negligence of lessor, its agents and employees." The trial court concluded that APAC's liability to Bryant was caused by its "sole negligence." We hold this to have been error, and we reverse that determination.

We are at a loss to understand the reasoning of the trial court. Bryant was injured by the negligence of All Temp and of the crane operator, Powell. At the time of the accident, Powell was the employee of Foley, not of APAC. We cannot divine any theory under which it can be concluded that the damages suffered by Bryant were caused by the "sole negligence" of APAC.

Foley relies on *Baker v. City of Topeka*, 231 Kan. 328, 644 P.2d 441 (1982), to support the trial court's decision. That reliance is misplaced. In *Baker*, the City of Topeka had an independent liability to the plaintiff and settled that liability. In this case, the only basis for liability on the part of APAC is respondeat superior. We already concluded that Powell was neither the employee nor agent of APAC at the time of the accident. In fact, the doctrine of respondeat superior makes Foley vicariously liable for the negligence

of Powell and not APAC. In this regard, we note that the jury, in assessing the liability of the defendants, was not concerned with the indemnification agreement now at issue before this court.

Under no construction that we can determine could this accident have been the result of the "sole negligence" of APAC. We hold that the trial court erred in holding that Bryant's injuries were due to the "sole negligence" of APAC. Foley cannot escape its contractual obligation of reimbursement, under that clause of the agreement.

## EXCLUSIVE REMEDY

The trial court held that APAC's claim against Foley was barred by the"exclusive remedy" provisions of K.S.A. 44-501(b), which provides:

"Except as provided in the workers compensation act, no employer, or other employee of such employer, shall be liable for any injury for which compensation is recoverable under the workers compensation act *nor shall an employer be liable to any third party for any injury or death of an employee which was caused under circumstances creating a legal liability against a third party and for which workers compensation is payable by such employer.*" (Emphasis added.)

We disagree with the trial court's decision on this issue and reverse that decision.

To begin with, there is no dispute that Foley was the "statutory employer" of Bryant under K.S.A. 44-503. In the proper context, Foley could have legitimately sought protection under K.S.A. 44-503. The question we must resolve is whether in the context in which we now deal, that statute is applicable.

"Interpretation of a statute is a question of law. An appellate court's review of a question of law is unlimited." *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995). "When determining a question of law, this court is not bound by the decision of the trial court." *Memorial Hospital Ass'n v. Knutson*, 239 Kan. 663, 668, 722 P.2d 1093 (1986).

We do not believe that K.S.A. 44-501(b) was intended to abrogate contractual rights and duties between consenting parties under a contract entered into with full knowledge of its provisions.

This seems to be particularly true when the issue arises in a context which has nothing whatsoever to do with the Workers Compensation Act.

This is not a workers compensation case. Bryant has not pursued any action of any nature against Foley, let alone one for workers compensation. The harm which the statute was designed to prevent simply does not exist in this case.

Our research indicates that a majority of the states which have addressed this issue have held that the "exclusive remedy" provisions of their workers compensation acts did not bar third-party claims against an employer when those claims were based upon an express indemnification agreement. See Annot., 100 A.L.R. 3d 380.

In *McCleskey v. Noble Corp.*, 2 Kan. App. 2d 240, 244, 577 P.2d 830 (1978), this court indicated that a common-law indemnity "can be had by the third party against the employer when the employer has breached an *independent duty* owed the *third party*." We also indicated in that decision that the majority rule would deny indemnity *"unless based on an independent* contractual *duty or a special legal relationship."* (Emphasis added.) 2 Kan. App. 2d at 245. In this case, the claim of APAC against Foley is based on an independent contractual duty voluntarily assumed by Foley.

In *Beach v. M & N Modern Hydraulic Press Co.*, 428 F. Supp. 956, 961-62 (D. Kan. 1977), the federal district court noted that an independent legal duty owed by an employer to a third party would be enforced despite provisions of the Workers Compensation Act.

Foley argues that the "third party" language was added to the statute to prevent all third-party liability of any kind or nature whatsoever. There is no legislative history to support such a proposition, and the statutory language employed does not compel such a conclusion. If the legislature had intended to prevent all third-party liability under any circumstances whatsoever, it could have said so; it did not.

In *Kimzey v. Interpace Corp.*, 10 Kan. App. 2d 165, 169, 694 P.2d 907, *rev. denied* 237 Kan. 887 (1985), we said that "where the employer's liability is alleged to arise solely by reason of its independent assumption, by contract or operation of law, of the

396

obligations of a third-party tortfeasor, the exclusivity provisions of the workers' compensation law do not bar a common law action by an employee." We went on to discuss the so-called "dual capacity doctrine":

"The doctrine should not be used for the purpose of simply evading the exclusivity provision of the Workmen's Compensation Act. When properly applied, it will be limited to those exceptional situations where the employer-employee relationship is not involved because the employer is acting as a second persona unrelated to his status as an employer, that confers upon him obligations independent of those imposed upon him as an employer. As such, it will not defeat the purposes or policies of the act. Nor, in our view, will it erode the employer's immunity under the exclusivity provision of the act *where the claim of liability is properly within the purview of the act.* [Citations omitted.]" (Emphasis added.) 10 Kan. App. 2d at 170.

We believe that the philosophy expressed in *Kimzey, McCleskey,* and *Beach* is compelling. We join the majority of our sister states in resolving this issue.

We hold that APAC's claim for indemnification against Foley is an independent contractual obligation voluntarily assumed by Foley and completely independent of Foley's status as the statutory employer under the Workers Compensation Act. Accordingly, the claim by APAC for indemnification is not barred by the "exclusive remedy" provisions of K.S.A. 44-501(b). That statute is intended to protect employers from liability while operating under the provisions of the Workers Compensation Act. In this case, neither the claim of Bryant nor the claim of APAC against Foley has any relationship whatsoever to the Workers Compensation Act. Under these circumstances, there is no basis to conclude that the legislature intended to prohibit an employer and a third party from entering into binding enforceable contracts calling for indemnification.

We conclude that the indemnification provisions of the agreement between Foley and APAC should be enforced as written.

We reverse the decision of the trial court and direct that on remand judgment be entered in favor of APAC and against Foley for APAC's share of the Bryant judgment plus costs and fees incurred by APAC in defending the Bryant action. The precise

amount of attorney fees and costs incurred by APAC must be determined on remand.

Reversed and remanded.