No. 124,140

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JASON L. JEFFERIES,
*Appellant*,

v.

UNITED ROTARY BRUSH CORPORATION, et al.,
*Appellees*.

SYLLABUS BY THE COURT

1.

The dual capacity doctrine, first recognized in *Kimzey v. Interpace Corp.*, 10 Kan. App. 2d 165, 167, 694 P.2d 907 (1985), is a judicially recognized exception to the exclusive remedy provision of the Workers Compensation Act. Under this exception, an employer may be liable to its employee as a third-party tortfeasor if the employer has obligations to the employee independent of those imposed on it as an employer.

2.

The dual capacity doctrine does not apply when a machine manufactured by the employer injures the employee since the employer has a duty to its employees to maintain a safe work environment.

Appeal from Johnson District Court; JAMES F. VANO, judge. Opinion filed July 1, 2022. Affirmed.

Michael W. Blanton, of Gerash Steiner P.C., of Evergreen, Colorado, John M. Parisi, of Parisi Law Firm, of Overland Park, and Jim Lemonds, of Brown & Crouppen, of St. Louis, Missouri, for appellant.

Lee M. Baty and Morgan L. Simpson, of Baty Otto Coronado PC, of Kansas City, Missouri, for appellees.

Before BRUNS, P.J., CLINE, J., and JAMES L. BURGESS, S.J.

CLINE, J.: Jason L. Jefferies received workers compensation benefits from his employer, United Rotary Brush Corporation (URBC), after he was injured at work while operating a convoluted press machine. He then filed a civil suit against URBC (and several related entities) alleging negligent design and manufacture of the press machine. Jefferies claimed URBC was civilly liable under the dual capacity doctrine, a judicially recognized exception to the exclusive remedy provision of the Workers Compensation Act. See Kimzey v. Interpace Corp., 10 Kan. App. 2d 165, 166-67, 694 P.2d 907 (1985). Under this exception, an employer may be liable to its employee as a third-party tortfeasor if the employer has obligations to the employee independent of those imposed on it as an employer. 10 Kan. App. 2d at 167.

The district court dismissed Jefferies' case on summary judgment after finding URBC manufactured the press machine. The dual capacity doctrine does not apply when a machine manufactured by the employer injures the employee since the employer has a duty to its employees to maintain a safe work environment. 10 Kan. App. 2d at 167-68. As a result, Jefferies was barred from another recovery out of URBC. It also denied Jefferies' untimely motion to amend his petition to add another party, which he filed

2

while the summary judgment motion was pending. Jefferies appeals both decisions. After a careful review of the record, we find no error and affirm.

*Jefferies' Civil Suit*

On March 7, 2019, Jefferies filed a civil suit against URBC and five related entities (Defendants). He alleged that on March 8, 2017, while operating a press machine on the job for URBC in Lenexa, Kansas, a brush wafer became lodged. As he tried to dislodge it, the machine activated and crushed his left arm and hand. He sued for negligence, breach of warranty, and strict liability based on the design and manufacture of the machine. He claimed Defendants were subject to civil tort liability for his injury under K.S.A. 44-504(a) and the dual capacity doctrine because he alleged URBC had acquired the entity that manufactured the machine "through an asset purchase, stock purchase and/or merger with a predecessor corporation or business entity that designed, manufactured, built, or assembled the machine."

*Summary Judgment Motion*

In August 2020, Defendants moved for summary judgment, on the basis that the claims against URBC were barred by the exclusive remedy provision of the Workers Compensation Act.

URBC merged with another company in 2008 (URB Sub., Inc.). Defendants claimed the press machine was manufactured after the merger and Jefferies claimed it was manufactured before the merger. The district court found this dispute immaterial since it found URBC survived the 2008 merger, meaning it was the same company before and after the merger. Thus, no matter when the press machine was manufactured, URBC (Jefferies' employer) was the manufacturer, so the dual capacity doctrine did not apply.

3

The district court relied on Section 2.1 of the 2008 merger agreement to support this finding:

> "**The Merger**. On the terms and subject to the conditions contained in this Agreement, at the Effective Time, in accordance with this Agreement and the KGCC, Merger Sub shall merge with and into the Company, *the Company shall continue as the Surviving Corporation* and the separate corporate existence of Merger Sub shall cease.'"

The merger agreement defined URBC as the "Company."

*Motion to Amend to Add URB of Canada*

At the December 2, 2020 hearing on Defendants' motion for summary judgment, Jefferies' attorney mentioned he had learned during depositions taken in August 2020, that the individual who designed the press machine (Harry Vegter) was an employee of URB of Canada, a wholly owned subsidiary of the holding company that also owns URBC. The attorney mentioned he intended to file a motion to amend the complaint to bring in URB of Canada. And, on December 23, 2020 (while the court's summary judgment decision was still pending), Jefferies moved for leave to file his first amended petition to add URB of Canada as a defendant under K.S.A. 2020 Supp. 60-215(a)(2) and (c)(3). Defendants opposed the motion. The district court heard Jefferies' motion on February 3, 2021, and took the matter under advisement. Jefferies then filed a new motion on February 4, 2021, titled "Plaintiff's Motion for Leave to File First Amended Petition to Add United Rotary Brush of Canada as a Party Out of Time." Defendants opposed this motion as well.

The district court denied Jefferies' motions to amend on the same day it issued its summary judgment order. The court determined that Jefferies' proposed amendment would not relate back to the original pleading date because it did not find Jefferies mistakenly named the wrong defendant when he filed his petition. And if he was

4

mistaken, the court found he should have moved to amend sooner. The case management order deadline for amendments to pleadings was November 2, 2020, and Jefferies never sought to extend it. The court pointed out that Jefferies received documents through discovery referencing URB of Canada's existence and potential involvement long before this deadline ran. Without relation back, the court found it would be futile to name URB of Canada now as a defendant since the claims were barred by the statutes of limitations.

It also held that allowing the belated amendment would be prejudicial to URB of Canada and the other defendants, since it would require more discovery regarding URB of Canada's potential involvement in manufacturing the press machine years after the injury occurred, when memories had faded. And, last, it denied Jefferies' claim that the Kansas Supreme Court administrative orders suspending statutes of limitations and statutory deadlines during the COVID-19 pandemic extended Jefferies' deadline to name additional parties.

*The district court correctly granted summary judgment to Defendants.*

Jefferies argues the district court erred in granting summary judgment because he claims URBC emerged from the 2008 merger a new company, so the dual capacity doctrine applies. He claims the court misconstrued the 2008 merger documents when it found URBC remained intact through the merger. He also contends Defendants admitted in their summary judgment briefing that URBC emerged as a new company from the merger.

To begin, URBC correctly notes that Jefferies did not object to the entry of summary judgment as to the remaining defendants in his brief, and so he has abandoned any such arguments. See *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017) ("Issues not adequately briefed are deemed waived or abandoned."). We will thus only address the arguments against URBC.

5

*Standard of Review*

We consider appeals from a district court's ruling on a motion for summary judgment de novo, applying the same standards the district court applied:

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and *where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment* must be denied.' [Citations omitted.]" *Hammond v. San Lo Leyte VFW Post #7515*, 311 Kan. 723, 727, 466 P.3d 886 (2020).

In a negligence action, summary judgment is proper if the only question presented is a question of law. *Manley v. Hallbauer*, 308 Kan. 723, 726, 423 P.3d 480 (2018) ("Generally, granting summary judgment in negligence cases must be done with caution. But '[a]n exception . . . applies when the only question presented is one of law.'"). The overall question here is a question of law—whether the dual capacity doctrine applies. And this court exercises de novo review over questions of law. 308 Kan. at 726. We must also interpret the 2008 merger agreement, which is another matter of law over which we have unlimited review. See *First Security Bank v. Buehne*, 314 Kan. 507, 510, 501 P.3d 362 (2021) ("'Our review over the interpretation and legal effect of written instruments is unlimited, and we are not bound by the lower courts' interpretations of those instruments.'").

*The Exclusive Remedy Provision of the Workers Compensation Act*

The exclusive remedy provision of the Workers Compensation Act, K.S.A. 2020 Supp. 44-501b(d), provides:

> "Except as provided in the workers compensation act, *no employer, or other employee of such employer, shall be liable for any injury, whether by accident, repetitive trauma, or occupational disease, for which compensation is recoverable under the workers compensation act . . . ."* (Emphasis added.)

Kansas courts interpret this provision to mean that an injured employee cannot maintain a civil action against his or her employer or another employee for damages based on common-law negligence if that injured employee could have recovered compensation for their injury under the Workers Compensation Act. *Hawkins v. Southwest Kansas Co-op Svc.*, 313 Kan. 100, 103, 484 P.3d 236 (2021) (referencing K.S.A. 2019 Supp. 44-501b[d], providing, "if an injured worker could have recovered compensation for an injury under the Act, the worker cannot bring an action against the employer or another employee for damages based on common-law negligence"); *Endres v. Young*, 55 Kan. App. 2d 497, 500, 419 P.3d 40 (2018) ("K.S.A. 2015 Supp. 44-501b[d] states clearly that no civil suit is permitted if 'compensation is recoverable under the workers compensation act.'").

*The Dual Capacity Doctrine*

One exception to the exclusive remedy provision, permitting civil claims against the employer, is the dual capacity doctrine. This doctrine was first recognized in Kansas in *Kimzey*, 10 Kan. App. 2d 165.

In *Kimzey*, David Kimzey was injured while operating a pyramid roll machine in the course of his employment with Interpace Corporation, Inc. After receiving workers

compensation benefits from Interpace, Kimzey then brought a products liability action against Interpace based on the design and manufacture of the roll machine. He claimed his injury was because of the machine manufacturer's negligence, design defect, and breach of warranty in designing and manufacturing the machine. Interpace was not the manufacturer of the machine—Lock Joint Pipe Co. was. But Kimzey claimed Interpace was liable to him under the dual capacity doctrine because Lock Joint had dissolved and merged into another corporation, which later merged into Interpace, and "[a]s a part of the merger agreement, Interpace contracted to assume 'all debts, liabilities, restrictions, duties, and obligations' of Lock Joint." 10 Kan. App. 2d at 165. The district court granted Interpace's motion for summary judgment because Kimzey's exclusive remedy against his employer was under the Workers Compensation Act. 10 Kan. App. 2d at 166.

The Court of Appeals began by discussing the dual capacity doctrine's origin. The court explained that under the exclusive remedy provision, if an employee recovered benefits under the act, he could not maintain a common-law negligence action against his employer for damages. 10 Kan. App. 2d at 166. But the court noted that if the negligence of a "*third person* not in the same employ as the injured worker" caused the injury, the worker could pursue workers compensation and also pursue an action against the third person. (Emphasis added.) 10 Kan. App. 2d at 167 (basing allowance of civil claim against third person on K.S.A. 1983 Supp. 44-504[a]); see also K.S.A. 44-504(a) (current version of the statute supporting same proposition). The allowance of third-party liability under these circumstances led to the dual capacity doctrine:

"According to the dual capacity doctrine, an employer who is generally immune from tort liability to an employee injured in a work-related accident may become liable to his employee as a third-party tortfeasor if he occupies, in addition to his capacity as an employer, a second capacity that confers upon him obligations independent of those imposed upon him as an employer. It is in this second capacity that liability to an employee may be imposed." 10 Kan. App. 2d at 167.

8

The *Kimzey* court then quoted a discussion from the Oklahoma Supreme Court on when it was appropriate to apply the dual capacity doctrine:

> "'This concept of duality, which confers third party status upon the employer, is more meaningful when viewed in terms of an employer having a dual persona. An employer may become a third person if he possesses a second persona so completely independent from and unrelated to his status as an employer, that by established standards, the law recognizes it as a separate legal person.'" 10 Kan. App. 2d at 167.

Significant here, the *Kimzey* court also noted:

> "The [Oklahoma Supreme] [C]ourt, in accordance with the great weight of authority in this country, rejected application of the dual capacity doctrine under a products liability theory in cases where *the employer manufactures, distributes or installs a product used in the employee's work* on the ground that *the employer's duty to provide a safe workplace for its employee* and its duty as a manufacturer to make a safe product are so inextricably intertwined that it cannot logically be separated into two distinct legal persons." (Emphases added.) 10 Kan. App. 2d at 167-68.

The *Kimzey* court began its analysis by first noting: "*If the roll machine involved in this case had been manufactured by defendant Interpace, it is clear that workers' compensation would be plaintiff's exclusive remedy*." (Emphasis added.) 10 Kan. App. 2d at 168. The court also noted that if Lock Joint was still in existence, the plaintiff could sue it as a third-party tortfeasor. But the court held these were not the issues at hand, because the plaintiff was asserting that his employer, Interpace, was liable based on the tortious conduct *of a third party*, Lock Joint. 10 Kan. App. 2d at 168. Because this was an issue of first impression in Kansas, the *Kimzey* court turned to a factually similar case from New York, *Billy v. Consolidated Mach. Tool Corp.*, 51 N.Y.2d 152, 432 N.Y.S.2d 879, 412 N.E.2d 934 (1980), which held:

9

"[W]here the employer's liability is alleged to arise solely by reason of its independent assumption, by contract or operation of law, of the obligations *of a third-party tortfeasor*, the exclusivity provisions of the workers' compensation law do not bar a common law action by an employee against his employer for injuries sustained in the course of his employment." (Emphasis added.) 10 Kan. App. 2d at 169 (citing *Billy*, 51 N.Y.2d at 156).

The *Kimzey* court held that applying the dual capacity doctrine would be appropriate under certain exceptional circumstances, explaining:

"The doctrine should not be used for the purpose of simply evading the exclusivity provision of the Workmen's Compensation Act. When properly applied, it will be limited to those exceptional situations where the employer-employee relationship is not involved because the employer is acting as a second persona unrelated to his status as an employer, that confers upon him obligations independent of those imposed upon him as an employer. As such, it will not defeat the purposes or policies of the act. *Nor, in our view, will it erode the employer's immunity under the exclusivity provision of the act where the claim of liability is properly within the purview of the act*. [Citations omitted.]" (Emphasis added.) 10 Kan. App. 2d at 170.

After noting the "Plaintiff's action [was] essentially an attempt to recover from a *third-party manufacturer* of a defective machine through a suit against its successor corporation," the *Kimzey* court ultimately held:

"Interpace, the successor corporation, by reason of the merger and its agreement to assume the liabilities of Lock Joint, *the third-party* manufacturer, stands in the shoes of Lock Joint with respect to the question of liability. Since Lock Joint had no basis to invoke the exclusivity provision of the Workmen's Compensation Act against plaintiff, Interpace is similarly precluded here." (Emphases added.) 10 Kan. App. 2d at 170.

In total, there are only two Kansas cases in which an injured employee tried to use the dual capacity doctrine in *Kimzey* to avoid the exclusive remedy provision—but in both cases, the court declined to apply the doctrine. See *Scott v. Wolf Creek Nuclear*

10

*Operating Corp.*, 23 Kan. App. 2d 156, 157-58, 161-62, 928 P.2d 109 (1996) (declining to apply the doctrine to confer tort liability on employer and physician's assistants employer hired to treat employees when physician's assistants negligently treated employee for non-work-related injury); *Hill v. Wenger Manufacturing, Inc*., No. 71,288, 1995 WL 18252810, at *2-3 (Kan. App. 1995) (unpublished opinion) (declining to extend doctrine to employer-manufactured product intended for sale to the public). Thus, to date, we have found no cases where the Kansas courts have extended the dual capacity doctrine to any factual situation other than that presented in *Kimzey*.

*The district court correctly found the dual capacity doctrine does not apply.*

Jefferies raises two arguments on why the dual capacity doctrine applied here: (A) the 2008 transaction was a consolidation that created a new entity rather than a merger, or the 2008 agreement was at best ambiguous as to whether the parties intended for the transaction to be a merger or a consolidation, making it a question for the jury; and (B) even treating the 2008 transaction as a merger, the dual capacity doctrine applies because the key factor is not whether it was a merger or a consolidation, but whether the emerging entity assumed the liabilities of the pre-existing entities, and here it was undisputed that URBC assumed the liabilities of the merging entities.

*The district court correctly found the 2008 transaction was a merger.*

As to this first point, Jefferies presents three arguments on how the record shows that a new entity was formed in the 2008 transaction: (1) one of Defendants' proposed uncontroverted statements of fact is effectively an admission that a new entity was formed in the 2008 transaction; (2) the entity that emerged from the 2008 transaction was a new entity because it had different articles of incorporation, bylaws, directors, and officers than the pre-merger URBC; and (3) there would have been no reason for the 2008 agreement's language conveying that the emerging corporation would assume the

11

liabilities of the pre-existing entities if the URBC that emerged was the same as the prior URBC. Like the district court, we are unpersuaded.

### 1. *Defendants' uncontroverted statement of fact*

Jefferies claims URBC "admitted that a new company was formed as a result of the 2008 transaction" in its summary judgment brief. Jefferies is referring to paragraph five of Defendant's statement of uncontroverted facts: "5. On August 29, 2008, United Rotary Brush Corporation merged with URB Merger Sub, Inc. to form United Rotary Brush Corporation." But this statement does not support the notion that a new entity was formed in the 2008 transaction. Quite the opposite since the post-merger company had the same name as the pre-merger company. We agree with the district court that this statement does not say or mean URBC ceased to exist or emerged as a new company. And such a reading conflicts with the clear language of the 2008 merger agreement. Thus, we agree Defendants did not make the admission Jefferies claims.

### 2. *Different articles of incorporation, bylaws, directors, and officers*

Second, Jefferies argues the post-merger entity was a new entity despite having the same name because the post-merger entity had different articles of incorporation, bylaws, directors, and officers than the pre-merger entity. First, he cites no legal authority to support the proposition that the surviving entity from a merger is a different entity than it was before the merger if it amended its articles of incorporation and bylaws and changed its directors and officers in the merger. He has abandoned this argument by failing to support it with any legal authority. See *Russell*, 306 Kan. at 1089 ("Issues not adequately briefed are deemed waived or abandoned.").

Next, the district court correctly found that Kansas corporate law does not support Jefferies' argument. The Kansas statute on mergers and consolidations provides that with

a merger, the agreement of merger must state: "such amendments or changes in the articles of incorporation of the surviving corporation as are desired to be effected by the merger, which amendments or changes may amend and restate the articles of incorporation of the surviving corporation in their entirety." K.S.A. 2020 Supp. 17-6701(b). In other words, the surviving corporation can change its articles of incorporation while remaining the same entity following the merger—evident from the fact that it is called the "*surviving* corporation" in the statute's language. (Emphasis added.) K.S.A. 2020 Supp. 17-6701(b). Again, we agree this change does not mean the parties intended post-merger URBC to be a new entity.

3. *Assumption of liabilities of pre-existing entities*

Another reason why Jefferies claims the 2008 merger created a new entity is because the post-merger entity agreed to assume the liabilities of the pre-existing entities. The specific sections of the agreement the parties raised on this issue provide:

> "2.1. **The Merger.** On the terms and subject to the conditions contained in this Agreement, at the Effective Time, in accordance with this Agreement and the KGCC, Merger Sub shall merge with and into the Company, the Company shall continue as the Surviving Corporation and the separate corporate existence of Merger Sub shall cease.
> "2.2 **Effect of the Merger.** Immediately following the Merger, the Surviving Corporation shall, with the effect set forth in the KGCC and this Agreement, (a) possess all the rights, privileges, immunities and franchises, both public and private, of the Constituent Entities, (b) be vested with all property (whether real, personal or mixed), all debts due on whatever account, all other causes of action and all and every other interest belonging to or due to each of the Constituent Entities, and (c) be responsible and liable for all the obligations and liabilities of each of the Constituent Entities."

Jefferies argues the language in Section 2.2(c) evidences the parties intended to create a new entity because "[t]here would be no reason to include this language if the corporation which emerged was the same as the prior corporation that shared the same

13

name." We disagree. It is reasonable to assume the parties included this provision to clarify that URBC would still be liable for its pre-merger liabilities or obligations along with any pre-merger liabilities and obligations of URB Merger Sub., Inc. That is, the purpose of the merger was not to shed pre-merger liabilities and obligations of either entity.

More importantly, when this provision is viewed in context, we do not find the parties intended to create a new entity with the merger. We cannot read this contractual provision in isolation; we must interpret it in the context of the entire 2008 merger agreement. *Russell v. Treanor Investments L.L.C.*, 311 Kan. 675, 680, 466 P.3d 481 (2020) ("'[I]nterpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners.'"). To that end, we note the agreement is entitled, "Agreement and Plan of Merger." The introductory paragraph of the agreement specifies that URBC is known as "the 'Company'" throughout the agreement and that URB Merger Sub., Inc. is known as "Merger Sub." And Section 2.1 specifies that "the Company [URBC] shall continue as the Surviving Corporation." The statement in Section 2.1 that "the separate corporate existence of Merger Sub shall cease" also supports this conclusion because there is no equivalent statement providing that URBC's existence shall cease after the merger.

When viewed in context, we do not find the parties intended post-merger URBC to be a new entity, nor do we find the agreement ambiguous in that regard.

*Jefferies misconstrues* Kimzey *and overstates the significance of the assumption of liability language.*

Jefferies contends that even if the 2008 transaction was a merger, the dual capacity doctrine still applies because URBC assumed the liabilities of the merging entities. To

14

support this contention, he claims "the key factor in applying the dual capacity doctrine is not the nature of the underlying transaction (i.e., merger or consolidation), but the fact that the emerging entity assumes the liabilities of the pre-existing entities." He gleans this statement from *Kimzey*'s discussion of a New York case, *Billy v. Consolidated Mach. Tool Corp.*: "As a part of the merger, the defendant corporation contracted to assume the liabilities and obligations of the predecessor corporations, including those of the corporation that had designed and manufactured the defective machine." *Kimzey*, 10 Kan. App. 2d at 169.

Jefferies misconstrues this statement and *Kimzey*'s holding. As discussed earlier, it is not enough for the employer to merely assume the liabilities of "the pre-existing entities" to trigger application of the dual capacity doctrine. The employer had to assume the liabilities of the *third-party tortfeasor*. And again, this is because the employer must be sitting in the shoes of a third-party to get around the exclusive remedy provision in the Workers Compensation Act. See *Kimzey*, 10 Kan. App. 2d at 170 ("Interpace, the successor corporation, by reason of the merger and its agreement to assume the liabilities of Lock Joint, the *third-party* manufacturer, stands in the shoes of Lock Joint with respect to the question of liability." [Emphasis added.]); K.S.A. 44-504(a) (permitting injured worker to take compensation under the act and pursue civil action against third party not "in the same employ" that caused worker's injury). Under the facts here, the employer, URBC, would have had to assume the liabilities of a third-party entity that manufactured the machine. See *Kimzey*, 10 Kan. App. 2d at 168, 170 ("If the roll machine involved in this case had been manufactured by defendant Interpace, it is clear that workers' compensation would be plaintiff's exclusive remedy. . . . Nor, in our view, will [the dual capacity doctrine] erode the employer's immunity under the exclusivity provision of the act where the claim of liability is properly within the purview of the act."). But that did not happen—URBC assumed its *own* liabilities and that of URB Sub. Inc. (which no one identifies as a manufacturer of the press machine).

Jefferies continues down his misguided path by claiming that after *Kimzey*, "Kansas Courts have continued to recognize that where a claim arises by virtue of 'an independent contractual obligation voluntarily assumed' by the employer, the exclusivity provisions do not apply to bar that claim," citing to *Estate of Bryant v. All Temperature Insulation, Inc.*, 22 Kan. App. 2d 387, 396, 916 P.2d 1294 (1996). But Jefferies misrepresents the holding in *Estate of Bryant* by neglecting to include the second half of the court's holding: "The 'exclusive remedy' provision of K.S.A. 44-501(b) does not bar the enforcement of an independent contractual indemnification obligation voluntarily assumed *by a statutory employer in favor of a third party where the claim of liability is outside the purview of and bears no relationship to the Workers Compensation Act*." (Emphasis added.) 22 Kan. App. 2d 387, Syl. ¶ 6. Unlike *Estate of Bryant*, the claim of liability here is within the purview of the Act.

After the *Estate of Bryant* court determined the claim was not barred by the exclusive remedy provision, it stated: "That statute is *intended to protect employers from liability while operating under the provisions of the Workers Compensation Act*. In this case, neither the claim of [the injured worker] nor the claim of [the third party] against [the employer] have any relationship whatsoever to the Workers Compensation Act." *Estate of Bryant*, 22 Kan. App. 2d at 396. That is not the case here, since URBC, Jefferies' employer, operated under the Act, providing Jefferies with a settlement award for his injury. Thus, according to *Estate of Bryant*, the situation here is exactly the one the exclusive remedy was designed to protect against.

It was undisputed that URBC manufactured the convoluted press. The district court correctly concluded the factual dispute about *when* the subject press machine was manufactured was immaterial. There was thus no genuine dispute as to any material fact and URBC was entitled to summary judgment as a matter of law: Under *Kimzey*, the dual capacity doctrine does not apply because Jefferies' employer manufactured the machine. The district court did not err in granting summary judgment to URBC.

16

*The district court did not abuse its discretion in denying Jefferies leave to amend his petition.*

Jefferies bears the burden of showing the district court abused its discretion in denying his motion for leave to file a first amended petition to add URB of Canada as a party. *Smith v. Philip Morris Companies, Inc.*, 50 Kan. App. 2d 535, 586-87, 335 P.3d 644 (2014). The court abuses its discretion if "'(1) no reasonable person would take the view adopted by the trial judge; (2) the ruling is based on an error of law; or (3) substantial competent evidence does not support a finding of fact on which the exercise of discretion was made.'" *Luckett v. Kansas Employment Security Board of Review*, 56 Kan. App. 2d 1211, 1221, 445 P.3d 753 (2019).

The Kansas Supreme Court has recognized five valid reasons for denying a motion to amend a pleading: "(1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party by virtue of allowance of the amendment, and (5) futility of [the] amendment." *Smith*, 50 Kan. App. 2d at 587 (citing *Johnson v. Board of Pratt County Comm'rs*, 259 Kan. 305, 327, 913 P.2d 119 [1996]). Here, the district court denied Jefferies' motion as futile. It also found Jefferies had unduly delayed in seeking to amend and that the proposed amendment would unduly prejudice URB of Canada.

The district court found Jefferies' proposed amendment would be futile since the statute of limitations on the claim against URB of Canada had run, and the amendment would not relate back to the date of his original pleading. Under K.S.A. 2020 Supp. 60-215(c)(3), Jefferies' amendment to his pleading would only relate back if, within the statute of limitations on his claim against URB of Canada, Jefferies could show URB of Canada "(A) [r]eceived such notice of the action that it will not be prejudiced in defending on the merits; and (B) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."

Kansas courts have repeatedly held the relation back doctrine under K.S.A. 2020 Supp. 60-215(c)(3) applies when "'the plaintiff intended from the outset to sue the correct defendant but through some error did not actually have the exact name of the defendant.'" *In re CEC Entertainment, Inc., Shareholder Litigation*, No. 120,234, 2019 WL 4725289, at *9 (Kan. App. 2019) (unpublished opinion) (quoting *Martindale v. Robert T. Tenny, M.D., P.A.*, 250 Kan. 621, 642, 829 P.2d 561 [1992]). And regarding this holding, our court recently noted:

> "[F]or more than 25 years, Kansas courts—both state and federal—have looked to the *Martindale* decision when addressing relation back issues under K.S.A. 2018 Supp. 60-215(c). See *Srivastava v. University of Kansas*, No. 118,329, 2018 WL 1770325, at *9-10 (Kan. App. 2018) (unpublished opinion) (plaintiff cannot use the 'relation-back provision because the provision does not exist to give relief to plaintiffs who make errant strategic decisions'); *Hoover v. St. Francis Health Center*, No. 97,175, 2007 WL 2695840, at *4 (Kan. App. 2007) [(unpublished opinion)] (K.S.A. 60-215[c] does not provide relief for a plaintiff who made a conscious decision not to sue a party); *Pedro v. Armour Swift-Eckrich*, 118 F. Supp. 2d 1155, 1159 (D. Kan. 2000) (quoting *Martindale* in finding that there is no support for the suggestion 'that Kansas courts would ignore the mistaken identity requirement in applying K.S.A. § 60-215[c]'); *Gardner By & Through Gardner v. Toyota Motor Sales, U.S.A., Inc.*, 793 F. Supp. 287, 289 (D. Kan. 1992) (citing *Martindale* in concluding that '[r]elation back to add an omitted party is appropriate only where the party seeking the amendment was prevented from bringing the action against the omitted party due to a mistake of identity')." *In re CEC Entertainment, Inc., Shareholder Litigation*, 2019 WL 4725289, at *9.

The district court found Jefferies pointed to no evidence in the record reflecting a mistake about the proper identity of the defendants when he filed his lawsuit. Nor does Jefferies claim on appeal that he was mistaken about URB of Canada's existence. Instead, he argues that while he was aware of URB of Canada's existence, he was not aware it was potentially liable for his injuries. But that is not the test. Indeed, if it were, the statute of limitations would be meaningless because a potential defendant could be brought in at

any time. That Jefferies did not know of URB of Canada's potential liability until after the statute of limitations had run is of no consequence. See *Osborn v. Kansas Dept. for Children and Families,* No. 122,662, 2022 WL 1511255, at *17 (Kan. App. 2022) (unpublished opinion) (finding the plaintiff's "lack of knowledge of [a new party's] involvement differs from a mistake about the identity of the proper party that a plaintiff intended to name from the beginning of the case").

Similarly, Jefferies offers no evidence that URB of Canada "knew or should have known that . . . but for a mistake concerning the proper party's identity," it would have been sued. K.S.A. 2020 Supp. 60-215(c)(3)(B). While Jefferies argued he delayed in joining URB of Canada because he relied on Defendants' denials of URB of Canada's involvement, he offers no evidence to support URB of Canada's awareness of his claim.

Based on our review of the record, we conclude that it was reasonable for the district court to find Jefferies made a deliberate choice not to sue URB of Canada when he filed his lawsuit, which did not result from a mistake about the proper party's identity. Since his amendment would not relate back, the district court did not abuse its discretion in finding it to be futile. We need not address the rest of Jefferies' arguments, since futility of amendment is a sufficient legal basis to deny the motion.

Jefferies has not indicated the district court's decision to deny his motion to amend stemmed from a legal error or that substantial competent evidence does not support its findings of fact. We also cannot say that no reasonable person would take the view adopted by the district court. As a result, we find the district court did not abuse its discretion in denying Jefferies' motion for leave to file an amended petition to add URB of Canada as a party, nor did it err in granting summary judgment to URBC.

Affirmed.